# U.S. District Court
## U.S. District of Minnesota (DMN)
## CIVIL DOCKET FOR CASE #: 0:12–cv–03175–PAM–JSM

U.S. Bank National Association et al v. Indian Harbor Insurance Company et al

Assigned to: Senior Judge Paul A. Magnuson
Referred to: Magistrate Judge Janie S. Mayeron
Demand: $9,999,000
Case in other court:  USCA 8th Circuit, 15–01691
Cause: 28:1332 Diversity–Breach of Contract

Date Filed: 12/21/2012
Date Terminated: 12/22/2014
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

**Plaintiff**

| | | |
|---|---|---|
| **U.S. Bank National Association**<br>*a national banking association* | represented by | **Marshall Gilinsky**<br>Anderson Kill P.C.<br>110 Main Street Ste 4E<br>Burlington, VT 05401<br>802–399–2906<br>Email: mgilinsky@andersonkill.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **Patrick J Boley**<br>Larson King, LLP<br>30 E 7th St Ste 2800<br>St Paul, MN 55101–4922<br>651–312–6500<br>Fax: 651–312–6618<br>Email: pboley@larsonking.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |
| | | **Vivian Costandy Michael**<br>Anderson Kill PC<br>1251 Avenue of the Americas<br>New York, NY 10020<br>212–278–1000<br>Email: vmichael@andersonkill.com<br>*LEAD ATTORNEY*<br>*PRO HAC VICE*<br>*ATTORNEY TO BE NOTICED* |
| | | **William G Passannante**<br>Anderson Kill P.C.<br>1251 Avenue of the Americas<br>New York, NY 10020–1182<br>(212) 278–1000<br>Email: wpassannante@andersonkill.com |

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond A Mascia , Jr**
Anderson Kill & Olick PC
1251 Avenue of the Americas
New York, NY 10020
212−278−1000
Email: rmascia@andersonkill.com
*TERMINATED: 06/03/2014*
*PRO HAC VICE*

**John M Bjorkman**
Larson King, LLP
30 E 7th St Ste 2800
St Paul, MN 55101−4922
651−312−6511
Fax: 651−312−6618
Email: jbjorkman@larsonking.com
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**U.S. Bancorp**
*a Delaware corporation*

represented by **Marshall Gilinsky**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Patrick J Boley**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Vivian Costandy Michael**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**William G Passannante**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Raymond A Mascia , Jr**
(See above for address)
*TERMINATED: 06/03/2014*
*PRO HAC VICE*

**John M Bjorkman**

(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Indian Harbor Insurance Company**
*a North Dakota corporation*

represented by **Amy L Schwartz**
Lapp Libra Thomson Stoebner & Pusch, Chartered
120 S 6th St Ste 2500
Mpls, MN 55402
612–343–4970
Fax: 612–338–6651
Email: aschwartz@lapplibra.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**James T. Sandnes**
Skarzynski Black LLC
One Battery Park Plaza
32nd Floor
New York, NY 10004
212–820–7700
Fax: 212–820–7740
Email: jsandnes@skarzynski.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Richard T Thomson**
Lapp Libra Thomson Stoebner & Pusch, Chartered
120 S 6th St Ste 2500
Mpls, MN 55402
612–338–5815
Fax: 612–338–6651
Email: rthomson@lapplibra.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Tammy Yuen**
Skarzynski Black LLC
One Battery Park Plaza 32nd Floor
New York, NY 10004
212–820–7700
Email: tyuen@skarzynski.com
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Tyler D Candee**

U.S. Bank, NA
800 Nicolelt Mall
BC–MN–H21N
INACTIVE
Minneapolis, MN 55402
612–303–7827
Fax: 612–303–7888
Email: tyler.candee@usbank.com
*TERMINATED: 01/28/2014*

**Defendant**

**ACE American Insurance Company**          represented by   **Edward P Gibbons**
*a Pennsylvania corporation*                                 Walker Wilcox Matousek LLP
                                                             One North Franklin Street Suite 3200
                                                             Chicago, IL 60606
                                                             312–244–6700
                                                             Email: egibbons@wwmlawyers.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Tiffany Saltzman–Jones**
                                                             Walker Wilcox Matousek LLP
                                                             1 N Franklin Street Ste 3200
                                                             Chicago, IL 60606
                                                             312–244–6700
                                                             Email: tsj@wwmlawyers.com
                                                             *LEAD ATTORNEY*
                                                             *PRO HAC VICE*
                                                             *ATTORNEY TO BE NOTICED*

                                                             **Alec J Beck**
                                                             Ford & Harrison LLP
                                                             225 South Sixth Street
                                                             Suite 3150
                                                             Minneapolis, MN 55402
                                                             612–486–1700
                                                             Fax: 612–486–1701
                                                             Email: abeck@fordharrison.com
                                                             *ATTORNEY TO BE NOTICED*

| Date Filed | # | Page | Docket Text |
|------------|---|------|-------------|
| 12/21/2012 | 1 | | COMPLAINT against All Defendants. ( Filing fee $ 350 receipt number 0864–3396582.) Filed by U.S. Bank National Associataion, U.S. Bancorp. Filer requests summons issued. (Attachments: # 1 Exhibit(s) A–D, # 2 Civil Cover Sheet) (Bjorkman, John) (Entered: 12/21/2012) |
| 12/21/2012 | 2 | | RULE 7.1 DISCLOSURE STATEMENT. U.S. Bancorp is a corporate parent of Plaintiff U.S. Bank National Associataion. (Bjorkman, John) (Entered: 12/21/2012) |

| 12/21/2012 | 3 | | RULE 7.1 DISCLOSURE STATEMENT. U.S. Bank National Association is a wholly−owned subsidiary of Plaintiff U.S. Bancorp. (Bjorkman, John) (Entered: 12/21/2012) |
|---|---|---|---|
| 12/21/2012 | 4 | | TEXT−ONLY ENTRY. CLERK'S NOTICE OF INITIAL CASE ASSIGNMENT. Case assigned to Judge Paul A. Magnuson per Master List referred to Magistrate Judge Janie S. Mayeron. Please use case number 12−cv−3175 (PAM/JSM). (lmb) (Entered: 12/21/2012) |
| 12/21/2012 | 5 | | Summons Issued as to ACE American Insurance Company, Indian Harbor Insurance Company. (lmb) (Entered: 12/21/2012) |
| 12/21/2012 | 6 | | TEXT ONLY ENTRY: Notice re: Non−Admitted Attorney

We have received documents listing **William G. Passannante, Marshall Gilinsky** as counsel of record. If he or she wishes to be listed as an attorney of record in this case, he or she must be admitted to the bar of the U.S. District Court of Minnesota in accordance with Local Rule 83.5 (a), (b) and (c) or temporarily admitted pro hac vice in accordance with Local Rule 83.5 (d) or (e).

For more admissions information and forms, please see the Attorney Forms Section of the courts website at href=http://www.mnd.uscourts.gov/FORMS/court_forms.shtml#attorneyforms. (lmb) (Entered: 12/21/2012) |
| 02/21/2013 | 7 | | ORDER − In re dispositive−motion practice in cases assigned to Judge Magnuson. Signed by Senior Judge Paul A. Magnuson on August 13, 2012. (smr) (Entered: 02/21/2013) |
| 04/18/2013 | 8 | | SUMMONS Returned Executed by U.S. Bank National Association, U.S. Bancorp. ACE American Insurance Company served on 4/17/2013, answer due 5/8/2013. (Bjorkman, John) (Entered: 04/18/2013) |
| 04/18/2013 | 9 | | DOCUMENT FILED IN ERROR−INCORRECT EVENT−WILL REFILE. ACKNOWLEDGEMENT OF SERVICE Executed as to 5 Summons Issued, 1 Complaint, *by Indian Harbor Insurance Company* Acknowledgement filed by U.S. Bancorp, U.S. Bank National Association. (Bjorkman, John) Modified text on 4/19/2013 (lmb). (Entered: 04/18/2013) |
| 04/19/2013 | 10 | | SUMMONS Returned Executed by U.S. Bank National Association, U.S. Bancorp. Indian Harbor Insurance Company served on 4/18/2013, answer due 5/9/2013. (Bjorkman, John) (Entered: 04/19/2013) |
| 05/23/2013 | 11 | | STIPULATION re 1 Complaint, *Date to Respond* by Indian Harbor Insurance Company, U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Attachment Filed in Error−Exhibit(s) proposed order)(Boley, Patrick) Modified text on 5/23/2013 (jz). (Entered: 05/23/2013) |
| 05/23/2013 | 12 | | TEXT ONLY ENTRY: Notice re: Non−Admitted Attorney

We have received documents listing **Tammy Yuen** as counsel of record. If he or she wishes to be listed as an attorney of record in this case, he or she must be admitted to the bar of the U.S. District Court of Minnesota in accordance with Local Rule 83.5 (a), (b) and (c) or temporarily admitted pro hac vice in |

| | | | |
|---|---|---|---|
| | | | accordance with Local Rule 83.5 (d) or (e).<br><br>For more admissions information and forms, please see the Attorney Forms Section of the courts website at href=http://www.mnd.uscourts.gov/FORMS/court_forms.shtml#attorneyforms. (jz) (Entered: 05/23/2013) |
| 05/23/2013 | 13 | | ORDER: Defendant Indian Harbor shall answer or otherwise respond to the Complaint on or before June 10, 2013. Signed by Magistrate Judge Janie S. Mayeron on 5/23/13. (jam) (Entered: 05/23/2013) |
| 05/24/2013 | 14 | | MOTION for Admission Pro Hac Vice for Attorney Raymond A. Mascia, Jr.. Filing fee $ 100, receipt number 0864−3568384 by U.S. Bancorp, U.S. Bank National Association. (Boley, Patrick) (Entered: 05/24/2013) |
| 05/24/2013 | 15 | | MOTION for Admission Pro Hac Vice for Attorney William G. Passannante. Filing fee $ 100, receipt number 0864−3568394 by U.S. Bancorp, U.S. Bank National Association. (Boley, Patrick) (Entered: 05/24/2013) |
| 05/24/2013 | 16 | | MOTION for Admission Pro Hac Vice for Attorney Marshall Gilinsky. Filing fee $ 100, receipt number 0864−3568400 by U.S. Bancorp, U.S. Bank National Association. (Boley, Patrick) (Entered: 05/24/2013) |
| 05/24/2013 | 17 | | TEXT ONLY ENTRY. ORDER granting 14 Motion for Admission Pro Hac Vice of Attorney Raymond A Mascia, Jr for U.S. Bancorp,U.S. Bank National Association. Approved by Magistrate Judge Janie S. Mayeron on 5/24/2013. (MAP) (Entered: 05/24/2013) |
| 05/24/2013 | 18 | | TEXT ONLY ENTRY. ORDER granting 15 Motion for Admission Pro Hac Vice of Attorney William G Passannante for U.S. Bancorp,U.S. Bank National Association. Approved by Magistrate Judge Janie S. Mayeron on 5/24/2013. (MAP) (Entered: 05/24/2013) |
| 05/24/2013 | 19 | | TEXT ONLY ENTRY. ORDER granting 16 Motion for Admission Pro Hac Vice of Attorney Marshall Gilinsky for U.S. Bancorp,U.S. Bank National Association. Approved by Magistrate Judge Janie S. Mayeron on 5/24/2013. (MAP) (Entered: 05/24/2013) |
| 06/06/2013 | 20 | | NOTICE of Appearance by Tyler D Candee on behalf of Indian Harbor Insurance Company. (Candee, Tyler) (Entered: 06/06/2013) |
| 06/06/2013 | 21 | | NOTICE of Appearance by Richard T Thomson on behalf of Indian Harbor Insurance Company. (Thomson, Richard) (Entered: 06/06/2013) |
| 06/06/2013 | 22 | | MOTION for Admission Pro Hac Vice for Attorney James Sandnes. Filing fee $ 100, receipt number 0864−3582938 by Indian Harbor Insurance Company. (Candee, Tyler) (Entered: 06/06/2013) |
| 06/06/2013 | 23 | | MOTION for Admission Pro Hac Vice for Attorney Tammy Yuen. Filing fee $ 100, receipt number 0864−3582949 by Indian Harbor Insurance Company. (Candee, Tyler) (Entered: 06/06/2013) |
| 06/07/2013 | | | TEXT ONLY ENTRY−ORDER granting 22 Motion for Admission Pro Hac Vice of Attorney James Sandnes for Indian Harbor Insurance Company. Approved by Magistrate Judge Janie S. Mayeron on 6/7/2013. (MAP) (Entered: 06/07/2013) |

| 06/07/2013 | | | TEXT ONLY ENTRY–ORDER granting 23 Motion for Admission Pro Hac Vice of Attorney Tammy Yuen for Indian Harbor Insurance Company. Approved by Magistrate Judge Janie S. Mayeron on 6/7/2013. (MAP) (Entered: 06/07/2013) |
| --- | --- | --- | --- |
| 06/10/2013 | 24 | | ANSWER to Complaint by Indian Harbor Insurance Company. (Sandnes, James) Modified text on 6/11/2013 (lmb). (Entered: 06/10/2013) |
| 06/11/2013 | 25 | | STIPULATION *regarding Defendant ACE American Insurance Company's Date to Respond to Complaint* by ACE American Insurance Company, U.S. Bancorp, U.S. Bank National Association. (Beck, Alec) Modified filers on 6/12/2013 (lmb). (Entered: 06/11/2013) |
| 06/11/2013 | 26 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by ACE American Insurance Company re 25 Stipulation (Beck, Alec) (Entered: 06/11/2013) |
| 06/12/2013 | 27 | | ORDER: ACE American Insurance Company answer due 6/24/2013. Signed by Magistrate Judge Janie S. Mayeron on 6/12/13. (jam) Modified on 6/12/2013 (jam). (Entered: 06/12/2013) |
| 06/14/2013 | 28 | | RULE 7.1 DISCLOSURE STATEMENT. XL Group plc is a corporate parent of Defendant Indian Harbor Insurance Company. (Candee, Tyler) (Entered: 06/14/2013) |
| 06/20/2013 | 29 | | MOTION for Admission Pro Hac Vice for Attorney Tiffany Saltzman–Jones. Filing fee $ 100, receipt number 0864–3599105 by ACE American Insurance Company. (Beck, Alec) (Entered: 06/20/2013) |
| 06/20/2013 | 30 | | TEXT ONLY ENTRY. ORDER granting 29 Motion for Admission Pro Hac Vice of Attorney Tiffany Saltzman–Jones for ACE American Insurance Company. Approved by Magistrate Judge Janie S. Mayeron on 6/20/2013. (MAP) (Entered: 06/20/2013) |
| 06/21/2013 | 31 | | ORDER: Pretrial Conference set for 8/27/2013 10:30 AM in Judge's Chambers, Suite 632 (STP) before Magistrate Judge Janie S. Mayeron. Signed by Magistrate Judge Janie S. Mayeron on 6/21/13. (Attachments: # 1 Consent Form)(jam) (Entered: 06/21/2013) |
| 06/24/2013 | 32 | | RULE 7.1 DISCLOSURE STATEMENT. ACE American Insurance Company is a Pennsylvania corporation and is 100% wholly–owned subsidiary of INA Holdings Corporation. (Beck, Alec) Modified text on 6/24/2013 (lmb). (Entered: 06/24/2013) |
| 06/24/2013 | 33 | | ANSWER to Complaint by ACE American Insurance Company. (Attachments: # 1 Exhibit(s) A) (Beck, Alec) (Entered: 06/24/2013) |
| 06/25/2013 | 34 | | MOTION for Admission Pro Hac Vice for Attorney Edward P. Gibbons. Filing fee $ 100, receipt number 0864–3604671 by ACE American Insurance Company. (Beck, Alec) (Entered: 06/25/2013) |
| 06/26/2013 | 35 | | TEXT ONLY ENTRY. ORDER granting 34 Motion for Admission Pro Hac Vice of Attorney Edward P Gibbons for ACE American Insurance Company. Approved by Magistrate Judge Janie S. Mayeron on 6/26/2013. (MAP) (Entered: 06/26/2013) |
| 08/13/2013 | 36 | | |

| | | | REPORT of Rule 26(f) Planning Meeting by ACE American Insurance Company, Indian Harbor Insurance Company, U.S. Bancorp, U.S. Bank National Association.(Sandnes, James) (Entered: 08/13/2013) |
|---|---|---|---|
| 08/27/2013 | 37 | | Minute Entry for proceedings held before Magistrate Judge Janie S. Mayeron: Pretrial Conference held on 8/27/2013. Pretrial Scheduling Order to be issued. (jam) (Entered: 08/27/2013) |
| 08/27/2013 | 38 | | PROTECTIVE ORDER. Signed by Magistrate Judge Janie S. Mayeron on 8/27/13. (jam) (Entered: 08/27/2013) |
| 08/28/2013 | 39 | | PRETRIAL SCHEDULING ORDER: Amended Pleadings due by 12/31/2013, Discovery due by 3/31/2014, Motions (non–disp) due 4/14/2014, Motions (disp) due by 11/1/2014, Ready for trial due by 1/15/2015. Signed by Magistrate Judge Janie S. Mayeron on 8/28/13. (jam) (Entered: 08/28/2013) |
| 01/27/2014 | 40 | | NOTICE OF ATTORNEY APPEARANCE/SUBSTITUTION for Indian Harbor Insurance Company. (Candee, Tyler) (Entered: 01/27/2014) |
| 02/14/2014 | 41 | | Joint MOTION to Stay *Discovery* by ACE American Insurance Company, Indian Harbor Insurance Company. (Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 42 | | NOTICE OF HEARING ON MOTION 41 Joint MOTION to Stay *Discovery* : Motion Hearing set for 2/28/2014 04:00 PM in Courtroom 6B (STP) before Magistrate Judge Janie S. Mayeron. (Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 43 | | MEMORANDUM in Support re 41 Joint MOTION to Stay *Discovery* filed by ACE American Insurance Company, Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 44 | | MEET and CONFER STATEMENT re 41 Motion to Stay filed by Indian Harbor Insurance Company. (Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 45 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by ACE American Insurance Company, Indian Harbor Insurance Company re 41 Joint MOTION to Stay *Discovery* (Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 46 | | MOTION for Judgment on the Pleadings by Indian Harbor Insurance Company. (Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 47 | | NOTICE OF HEARING ON MOTION 46 MOTION for Judgment on the Pleadings : Motion Hearing set for 6/5/2014 11:00 AM in Courtroom 7D (STP) before Senior Judge Paul A. Magnuson. (Schwartz, Amy) (Entered: 02/14/2014) |
| 02/14/2014 | 48 | | MOTION for Judgment on the Pleadings by ACE American Insurance Company. (Beck, Alec) (Entered: 02/14/2014) |
| 02/14/2014 | 49 | | NOTICE OF HEARING ON MOTION 48 MOTION for Judgment on the Pleadings : Motion Hearing set for 6/5/2014 11:00 AM in Courtroom 7D (STP) before Senior Judge Paul A. Magnuson. (Beck, Alec) (Entered: 02/14/2014) |
| 02/21/2014 | 50 | | MEMORANDUM in Opposition re 41 Joint MOTION to Stay *Discovery* filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 02/21/2014) |

| 02/21/2014 | 51 | | AFFIDAVIT of Marshall Gilinsky in OPPOSITION TO 41 Joint MOTION to Stay *Discovery* filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7, # 8 Exhibit(s) 8, # 9 Exhibit(s) 9, # 10 Exhibit(s) 10, # 11 Exhibit(s) 11, # 12 Exhibit(s) 12, # 13 Exhibit(s) 13, # 14 Exhibit(s) 14, # 15 Exhibit(s) 15, # 16 Exhibit(s) 16, # 17 Exhibit(s) 17, # 18 Exhibit(s) 18). (Gilinsky, Marshall) Modified text on 2/24/2014 (lmb). (Entered: 02/21/2014) |
|---|---|---|---|
| 02/21/2014 | 52 | | LR7.1/LR72.2 WORD COUNT COMPLIANCE CERTIFICATE by U.S. Bancorp, U.S. Bank National Association re 50 Memorandum in Opposition to Motion filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 02/21/2014) |
| 02/25/2014 | 53 | | Reply to Response to Motion re 41 Joint MOTION to Stay *Discovery* filed by ACE American Insurance Company, Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 02/25/2014) |
| 02/28/2014 | 54 | | Minute Entry for proceedings held before Magistrate Judge Janie S. Mayeron: Motion Hearing held on 2/28/2014 re 41 Joint MOTION to Stay *Discovery* filed by Indian Harbor Insurance Company, ACE American Insurance Company. Order to be issued. (las) (Entered: 03/03/2014) |
| 03/11/2014 | 55 | | NOTICE of Filing of Official Transcript. This filing has 1 transcript(s) associated with it. (CRB) (Entered: 03/11/2014) |
| 03/11/2014 | 56 | | DIGITAL AUDION RECORDING TRANSCRIPT of Motions Hearing held on February 28, 2014 before Magistrate Judge Janie S. Mayeron. (45 pages). Transcriber: Carla Bebault (E–mail: Carla_Bebault@mnd.uscourts.gov. Telephone: (651) 848–1220). Redaction Request due 4/1/2014. Redacted Transcript Deadline set for 4/11/2014. Release of Transcript Restriction set for 6/9/2014. For information on redaction procedures, please review Local Rule 5.5. (CRB) (Entered: 03/11/2014) |
| 03/12/2014 | 57 | | MOTION for Protective Order *Limiting Deposition Subpoenas* by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 03/12/2014) |
| 03/12/2014 | 58 | | NOTICE OF HEARING ON MOTION 57 MOTION for Protective Order *Limiting Deposition Subpoenas* : Motion Hearing set for 3/26/2014 09:30 AM in Courtroom 6B (STP) before Magistrate Judge Janie S. Mayeron. (Gilinsky, Marshall) (Entered: 03/12/2014) |
| 03/12/2014 | 59 | | MEMORANDUM in Support re 57 MOTION for Protective Order *Limiting Deposition Subpoenas* filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 03/12/2014) |
| 03/12/2014 | 60 | | MEET and CONFER STATEMENT re 57 Motion for Protective Order filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 03/12/2014) |
| 03/12/2014 | 61 | | AFFIDAVIT of Marshall Gilinsky in SUPPORT OF 57 MOTION for Protective Order *Limiting Deposition Subpoenas* filed by U.S. Bancorp, U.S. |

| | | | |
|---|---|---|---|
| | | | Bank National Association. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6)(Gilinsky, Marshall) Modified on 3/13/2014 (kt). (Entered: 03/12/2014) |
| 03/12/2014 | 62 | | MOTION to Compel by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 DOCUMENT FILED IN ERROR: Proposed Order)(Gilinsky, Marshall) Modified on 3/13/2014 (kt). (Entered: 03/12/2014) |
| 03/12/2014 | 63 | | NOTICE OF HEARING ON MOTION re 62 MOTION to Compel: Motion hearing set for 3/26/14 at 9:30 a.m. before Magistrate Judge Janie S. Mayeron in St. Paul. (Gilinsky, Marshall) Modified on 3/13/2014 (kt). (Entered: 03/12/2014) |
| 03/12/2014 | 64 | | MEET and CONFER STATEMENT re 62 Motion to Compel filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 03/12/2014) |
| 03/12/2014 | 65 | | MEMORANDUM in Support re 62 MOTION to Compel filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 03/12/2014) |
| 03/12/2014 | 66 | | AFFIDAVIT of Marshall Gilinsky in SUPPORT OF 62 MOTION to Compel filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7, # 8 Exhibit(s) 8, # 9 Exhibit(s) 9, # 10 Exhibit(s) 10, # 11 Exhibit(s) 11, # 12 Exhibit(s) 12, # 13 Exhibit(s) 13, # 14 Exhibit(s) 14, # 15 Exhibit(s) 15, # 16 Exhibit(s) 16, # 17 Exhibit(s) 17, # 18 Exhibit(s) 18, # 19 Exhibit(s) 19, # 20 Exhibit(s) 20, # 21 Exhibit(s) 21)(Gilinsky, Marshall) Modified on 3/13/2014 (kt). (Entered: 03/12/2014) |
| 03/17/2014 | 67 | | ORDER denying 41 Motion to Stay. Signed by Magistrate Judge Janie S. Mayeron on 03/17/2014. (las) (Entered: 03/17/2014) |
| 03/19/2014 | 68 | | MEMORANDUM in Opposition re 62 MOTION to Compel *and Cross−Motion for Protective Order* filed by ACE American Insurance Company. (Attachments: # 1 Exhibit(s) Certificate of Compliance with LR 7.1)(Saltzman−Jones, Tiffany) (Entered: 03/19/2014) |
| 03/19/2014 | 69 | | AFFIDAVIT of Tiffany Saltzman−Jones in OPPOSITION TO 62 MOTION to Compel *and in Support of (68) Cross−Motion for Protective Order* filed by ACE American Insurance Company. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s))(Saltzman−Jones, Tiffany) (Entered: 03/19/2014) |
| 03/19/2014 | 70 | | MEET and CONFER STATEMENT re 62 Motion to Compel filed by ACE American Insurance Company. (Saltzman−Jones, Tiffany) (Entered: 03/19/2014) |
| 03/19/2014 | 71 | | DOCUMENT FILED IN ERROR−WILL REFILE−NOTICE by ACE American Insurance Company re 68 Memorandum in Opposition to Motion *Hearing set for 3/26/2014 9:30 AM in Courtroom 6B (STP) before Magistrate Judge Janie S. Mayeron.* (Saltzman−Jones, Tiffany) Modified on 3/20/2014 (akl). (Entered: 03/19/2014) |
| 03/19/2014 | 72 | | RESPONSE in Opposition re 62 MOTION to Compel *and Cross Motion for Protective Order* filed by Indian Harbor Insurance Company. (Attachments: # |

| | | | |
|---|---|---|---|
| | | | 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 03/19/2014) |
| 03/19/2014 | 73 | | Declaration of Mark Vandevanter in Support of 72 Response in Opposition to Motion filed by Indian Harbor Insurance Company. (Sandnes, James) (Entered: 03/19/2014) |
| 03/19/2014 | 74 | | MEMORANDUM in Opposition re 57 MOTION for Protective Order *Limiting Deposition Subpoenas* filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 03/19/2014) |
| 03/20/2014 | 75 | | MEET and CONFER STATEMENT re 62 Motion to Compel filed by Indian Harbor Insurance Company. (Sandnes, James) (Entered: 03/20/2014) |
| 03/20/2014 | 76 | | DECLARATION of James Sandnes in Opposition re 62 MOTION to Compel filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D)(Sandnes, James) Modified on 3/20/2014 (kt). (Entered: 03/20/2014) |
| 03/20/2014 | 77 | | NOTICE OF HEARING ON MOTION 62 MOTION to Compel , 57 MOTION for Protective Order *Limiting Deposition Subpoenas* : Motion Hearing set for 3/26/2014 09:30 AM before Magistrate Judge Janie S. Mayeron. (Saltzman−Jones, Tiffany) (Entered: 03/20/2014) |
| 03/20/2014 | 78 | | NOTICE OF HEARING ON MOTION *for a Protective Order Limiting Deposition Notices* (Sandnes, James) (Entered: 03/20/2014) |
| 03/20/2014 | 79 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by ACE American Insurance Company. (Beck, Alec) Modified text on 3/20/2014 (MMP). (Entered: 03/20/2014) |
| 03/21/2014 | 80 | | AFFIDAVIT of Service by Indian Harbor Insurance Company re 72 Response in Opposition to Motion *and Cross−Motion for a Protective Order* (Schwartz, Amy) (Entered: 03/21/2014) |
| 03/24/2014 | 81 | | STIPULATION re 39 Scheduling Order, *to modify discovery schedule* by Indian Harbor Insurance Company. Jointly Signed by U.S. Bancorp, U.S. Bank National Association, and ACE American Insurance Company. (Schwartz, Amy) (Entered: 03/24/2014) |
| 03/24/2014 | 82 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by Indian Harbor Insurance Company re 81 Stipulation *to Modify Pretrial Scheduling Order* (Schwartz, Amy) (Entered: 03/24/2014) |
| 03/24/2014 | 83 | | RESPONSE in Support re 62 MOTION to Compel *Fact Discovery from Defendants and in Response to Defendants' Cross−Motion for a Protective Order* filed by U.S. Bancorp, U.S. Bank National Association. DOCUMENT/ATTACHMENT FILED IN ERROR−REFILED AS 86 . (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate). (Gilinsky, Marshall) Modified text, link on 3/25/2014 (lmb). (Entered: 03/24/2014) |
| 03/24/2014 | 84 | | AFFIDAVIT of Marshall Gilinsky in SUPPORT OF 62 MOTION to Compel *Fact Discovery from Defendants* filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) |

| | | | |
|---|---|---|---|
| | | | C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 Exhibit(s) F). (Gilinsky, Marshall) Modified text on 3/25/2014 (lmb). (Entered: 03/24/2014) |
| 03/24/2014 | 85 | | RESPONSE in Support re 57 MOTION for Protective Order *Limiting Deposition Subpoenas* filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 03/24/2014) |
| 03/25/2014 | 86 | | LR7.1/LR72.2 WORD COUNT COMPLIANCE CERTIFICATE by U.S. Bancorp, U.S. Bank National Association re 83 Response in Support of Motion, filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 03/25/2014) |
| 03/26/2014 | 87 | | Minute Entry for proceedings held before Magistrate Judge Janie S. Mayeron: Motion Hearing held on 3/26/2014 re 57 MOTION for Protective Order *Limiting Deposition Subpoenas* filed by U.S. Bancorp, U.S. Bank National Association, 62 MOTION to Compel filed by U.S. Bancorp, U.S. Bank National Association, Defendants' Cross Motion for A Protective Order. Motions taken under advisement. (kt) (Entered: 03/26/2014) |
| 03/27/2014 | 88 | | AMENDED PRETRIAL SCHEDULING ORDER: Discovery due by 4/30/2014. Motions (non–disp) due 5/14/2014. Motions (disp) due by 12/1/2014. Ready for trial due by 2/1/2015. Signed by Magistrate Judge Janie S. Mayeron on 3/27/2014. (las) (Entered: 03/28/2014) |
| 04/01/2014 | 89 | | NOTICE of Filing of Official Transcript. This filing has 1 transcript(s) associated with it. (CRB) (Entered: 04/01/2014) |
| 04/01/2014 | 90 | | TRANSCRIPT of Motions Hearing held on March 26, 2014 before Magistrate Judge Janie S. Mayeron. (129 pages). Court Reporter: Carla Bebault (E–mail: Carla_Bebault@mnd.uscourts.gov. Telephone: (651) 848–1220). Redaction Request due 4/22/2014. Redacted Transcript Deadline set for 5/2/2014. Release of Transcript Restriction set for 6/30/2014. For information on redaction procedures, please review Local Rule 5.5. (CRB) (Entered: 04/01/2014) |
| 04/24/2014 | 91 | | MEMORANDUM in Support re 48 MOTION for Judgment on the Pleadings filed by ACE American Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate, # 2 Exhibit(s) A, # 3 Exhibit(s) B, # 4 Exhibit(s) C, # 5 Exhibit(s) D, # 6 Exhibit(s) E, # 7 Exhibit(s) F)(Saltzman–Jones, Tiffany) (Entered: 04/24/2014) |
| 04/24/2014 | 92 | | MEMORANDUM in Support re 46 MOTION for Judgment on the Pleadings filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 04/24/2014) |
| 04/24/2014 | 93 | | Declaration of James Sandnes in Support of 46 MOTION for Judgment on the Pleadings filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N)(Sandnes, James) (Entered: 04/24/2014) |
| 05/07/2014 | 94 | | NOTICE OF RESCHEDULED MOTION Hearing: Defendant Indian Harbor Insurance Company 46 MOTION for Judgment on the Pleadings and |

| | | | |
|---|---|---|---|
| | | | Defendant ACE American Insurance Company 48 MOTION for Judgment on the Pleadings hearing set for 6/5/2014 11:00 AM have been rescheduled. The Motion Hearing is set for 6/12/2014 02:00 PM in Courtroom 7D (STP) before Senior Judge Paul A. Magnuson. (SMR) (Entered: 05/07/2014) |
| 05/15/2014 | 95 | | AMENDED NOTICE of Hearing on Motion: 46 MOTION for Judgment on the Pleadings : Motion Hearing set for 6/18/2014 10:00 AM in Courtroom 7D (STP) before Senior Judge Paul A. Magnuson. (Schwartz, Amy) (Entered: 05/15/2014) |
| 05/21/2014 | 96 | | MEMORANDUM in Opposition re 48 MOTION for Judgment on the Pleadings , 46 MOTION for Judgment on the Pleadings filed by All Plaintiffs. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 05/21/2014) |
| 05/21/2014 | 97 | | AFFIDAVIT of Marshall Gilinsky in OPPOSITION TO 48 MOTION for Judgment on the Pleadings , 46 MOTION for Judgment on the Pleadings filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s), # 2 Exhibit(s), # 3 Exhibit(s), # 4 Exhibit(s), # 5 Exhibit(s), # 6 Exhibit(s), # 7 Exhibit(s), # 8 Exhibit(s), # 9 Exhibit(s), # 10 Exhibit(s), # 11 Exhibit(s), # 12 Exhibit(s), # 13 Exhibit(s), # 14 Exhibit(s), # 15 Exhibit(s), # 16 Exhibit(s), # 17 Exhibit(s), # 18 Exhibit(s), # 19 Exhibit(s), # 20 Exhibit(s), # 21 Exhibit(s), # 22 Exhibit(s), # 23 Exhibit(s), # 24 Exhibit(s), # 25 Exhibit(s), # 26 Exhibit(s), # 27 Exhibit(s), # 28 Exhibit(s), # 29 Exhibit(s), # 30 Exhibit(s), # 31 Exhibit(s), # 32 Exhibit(s), # 33 Exhibit(s), # 34 Exhibit(s), # 35 Exhibit(s), # 36 Exhibit(s), # 37 Exhibit(s), # 38 Exhibit(s), # 39 Exhibit(s), # 40 Exhibit(s))(Gilinsky, Marshall) (Entered: 05/21/2014) |
| 05/30/2014 | 98 | | MEMORANDUM in Support re 48 MOTION for Judgment on the Pleadings filed by ACE American Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Beck, Alec) (Entered: 05/30/2014) |
| 05/30/2014 | 99 | | AFFIDAVIT of Tiffany Saltzman–Jones in SUPPORT OF 48 MOTION for Judgment on the Pleadings filed by ACE American Insurance Company. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2)(Beck, Alec) (Entered: 05/30/2014) |
| 05/30/2014 | 100 | | Reply to Response to Motion re 46 MOTION for Judgment on the Pleadings filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 05/30/2014) |
| 05/30/2014 | 101 | | Declaration of James Sandnes in Support of 100 Reply to Response to Motion filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B). (Sandnes, James) Modified text on 6/2/2014 (lmb). (Entered: 05/30/2014) |
| 06/02/2014 | 102 | | MOTION for Admission Pro Hac Vice for Attorney Vivian Costandy Michael. Filing fee $ 100, receipt number 0864–4000188 by U.S. Bancorp, U.S. Bank National Association. (Boley, Patrick) (Entered: 06/02/2014) |
| 06/03/2014 | 103 | | TEXT ONLY ENTRY: ORDER granting 102 Motion for Admission Pro Hac Vice of Attorney Vivian Costandy Michael for U.S. Bancorp,U.S. Bank National Association. Approved by Magistrate Judge Janie S. Mayeron on 6/3/2014. (MAP) (Entered: 06/03/2014) |

| 06/03/2014 | <u>104</u> | | NOTICE OF WITHDRAWAL AND SUBSTITUTION OF COUNSEL for U.S. Bancorp, U.S. Bank National Association. (Michael, Vivian) Modified text on 6/3/2014 (lmb). (Entered: 06/03/2014) |
|---|---|---|---|
| 06/18/2014 | | | ***TEXT ONLY***Minute Entry for proceedings held before Senior Judge Paul A. Magnuson: Motion Hearing held on 6/18/2014 re <u>48</u> MOTION for Judgment on the Pleadings filed by ACE American Insurance Company, <u>46</u> MOTION for Judgment on the Pleadings filed by Indian Harbor Insurance Company, argued, taken under advisement. (Court Reporter Ron Moen) (SMR) (Entered: 06/19/2014) |
| 07/03/2014 | <u>105</u> | 22 | Memorandum and Order: 1. Denying Indian Harbor's Motion for Judgment on the Pleadings <u>46</u> ; and 2. Denying ACE American's Motion for Judgment on the Pleadings <u>48</u> . (Written Opinion). Signed by The Hon. Paul A. Magnuson on 07/03/2014. (LLM) (Entered: 07/03/2014) |
| 07/15/2014 | <u>106</u> | | LETTER to Request Permission to File Motion to Reconsider *by Indian Harbor Insurance Co*. (Sandnes, James) (Entered: 07/15/2014) |
| 07/15/2014 | <u>107</u> | | LETTER to Request Permission to File Motion to Reconsider *by ACE American Insurance Company*. (Saltzman–Jones, Tiffany) (Entered: 07/15/2014) |
| 07/24/2014 | <u>108</u> | | ORDER: 1. Denying Indian Harbor's Request for Permission to File a Motion to Reconsider <u>106</u> ; and 2. Denying ACE American's Request for Permission to File a Motion to Reconsider. Signed by The Hon. Paul A. Magnuson on 07/24/2014. (LLM) (Entered: 07/24/2014) |
| 07/25/2014 | <u>109</u> | | Defendant Indian Harbor Insurance Company's Motion for 28 U.S.C. 1292(B) Certification of the <u>105</u> Courts Order on Motion for Judgment on the Pleadings. Filed by Indian Harbor Insurance Company. (Schwartz, Amy) Modified docket text on 8/5/2014 (TSS). (Entered: 07/25/2014) |
| 07/25/2014 | <u>110</u> | | NOTICE OF HEARING ON MOTION <u>109</u> MOTION to Alter/Amend/Correct Other Orders <u>105</u> Order on Motion for Judgment on the Pleadings: Motion Hearing set for 10/2/2014 11:00 AM in Courtroom 7D (STP) before Senior Judge Paul A. Magnuson. (Schwartz, Amy) (Entered: 07/25/2014) |
| 07/28/2014 | <u>111</u> | | ORDER that on or before August 4, 2014 the parties shall serve and file a letter brief not to exceed five pages, addressing whether the District Court's July 3, 2014 Order moots or narrows the scope of the motions this Court has under advisement Docket Nos. <u>57</u> and <u>62</u> and if it does not, why it does not. Signed by Magistrate Judge Janie S. Mayeron on 7/28/2014. (KMM) (Entered: 07/28/2014) |
| 07/28/2014 | <u>112</u> | | Defendant ACE American Insurance Company's Motion for 28 U.S.C. 1292(B) Certification of the Courts Order or for Certification of a Question of Law to the Delaware Supreme Court. Filed by ACE American Insurance Company. (Beck, Alec) Modified docket text on 8/5/2014 (TSS). (Entered: 07/28/2014) |
| 08/04/2014 | <u>113</u> | | LETTER TO MAGISTRATE JUDGE by Indian Harbor Insurance Company *(submitted on behalf of all parties jointly)*. (Schwartz, Amy) (Entered: 08/04/2014) |

| | | | |
|---|---|---|---|
| 08/04/2014 | 114 | | NOTICE OF CIVIL MOTION BRIEFING SCHEDULE. The defendants Motions for 28 U.S.C.1292(B) Certification of the Court's Order of July 3, 2014 (Doc.#109 and Doc.#112) will be taken on the papers. (see notice for deadlines) (SMR) (Entered: 08/04/2014) |
| 08/05/2014 | 115 | | ORDER re 113 Joint Letter Request. Signed by Magistrate Judge Janie S. Mayeron on 8/5/2014. (las) (Entered: 08/05/2014) |
| 08/07/2014 | 116 | | LETTER TO MAGISTRATE JUDGE by U.S. Bancorp, U.S. Bank National Association . (Boley, Patrick) (Entered: 08/07/2014) |
| 08/18/2014 | 117 | | MEMORANDUM in Support re 112 MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION OF THE COURTS JULY 3, 2014 ORDER OR FOR CERTIFICATION OF A QUESTION OF LAW TO THE DELAWARE SUPREME COURT filed by ACE American Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Saltzman–Jones, Tiffany) (Entered: 08/18/2014) |
| 08/18/2014 | 118 | | AMENDED NOTICE OF HEARING ON 109 MOTION FOR 28 U.S.C. §1292(B) CERTIFICATION OF THE COURT'S ORDER ON DEFENDANTS MOTION FOR JUDGMENT ON THE PLEADINGS: Defendant will submit on the papers its Motion for 28 U.S.C. §1292(b) Certification of the Courts Order on Motion for Judgment on the Pleadings. (Sandnes, James) Modified text on 8/19/2014 (MMP). (Entered: 08/18/2014) |
| 08/18/2014 | 119 | | MEMORANDUM in Support re 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on the Pleadings. filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 08/18/2014) |
| 08/18/2014 | 120 | | Declaration of James Sandnes in Support of 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on the Pleadings. filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 Exhibit(s) F, # 7 Exhibit(s) G, # 8 Exhibit(s) H, # 9 Exhibit(s) I)(Sandnes, James) (Entered: 08/18/2014) |
| 08/19/2014 | 121 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by Indian Harbor Insurance Company re 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on the Pleadings. (Schwartz, Amy) (Entered: 08/19/2014) |
| 08/19/2014 | 122 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by ACE American Insurance Company re 112 MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION OF THE COURTS JULY 3, 2014 ORDER OR FOR CERTIFICATION OF A QUESTION OF LAW TO THE DELAWARE SUPREME COURT (Beck, Alec) (Entered: 08/19/2014) |
| 09/08/2014 | 123 | | MEMORANDUM in Opposition re 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on the Pleadings, 112 MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION OF THE COURTS JULY 3, 2014 ORDER OR FOR CERTIFICATION OF A QUESTION OF LAW TO THE DELAWARE |

| | | | |
|---|---|---|---|
| | | | SUPREME COURT filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate). (Gilinsky, Marshall) Modified text on 9/9/2014 (lmb). (Entered: 09/08/2014) |
| 09/08/2014 | 124 | | AFFIDAVIT of Marshall Gilinsky, Esq. in OPPOSITION TO 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on the Pleadings., 112 MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION OF THE COURTS JULY 3, 2014 ORDER OR FOR CERTIFICATION OF A QUESTION OF LAW TO THE DELAWARE SUPREME COURT filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7, # 8 Exhibit(s) 8)(Gilinsky, Marshall) (Entered: 09/08/2014) |
| 09/11/2014 | 125 | | MOTION for Summary Judgment by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 09/11/2014) |
| 09/11/2014 | 126 | | MEMORANDUM in Support re 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 09/11/2014) |
| 09/11/2014 | 127 | | AFFIDAVIT of Mack Savage in SUPPORT OF 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 09/11/2014) |
| 09/11/2014 | 128 | | AFFIDAVIT of Marshall Gilinsky in SUPPORT OF 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3, # 4 Exhibit(s) 4, # 5 Exhibit(s) 5, # 6 Exhibit(s) 6, # 7 Exhibit(s) 7, # 8 Exhibit(s) 8, # 9 Exhibit(s) 9, # 10 Exhibit(s) 10, # 11 Exhibit(s) 11, # 12 Exhibit(s) 12, # 13 Exhibit(s) 13, # 14 Exhibit(s) 14, # 15 Exhibit(s) 15, # 16 Exhibit(s) 16, # 17 Exhibit(s) 17, # 18 Exhibit(s) 18, # 19 Exhibit(s) 19, # 20 Exhibit(s) 20, # 21 Exhibit(s) 21, # 22 Exhibit(s) 22, # 23 Exhibit(s) 23, # 24 Exhibit(s)24, # 25 Exhibit(s) 25, # 26 Exhibit(s) 26, # 27 Exhibit(s) 27, # 28 Exhibit(s) 28, # 29 Exhibit(s) 29, # 30 Exhibit(s) 30, # 31 Exhibit(s) 31, # 32 Exhibit(s) 32, # 33 Exhibit(s) 33, # 34 Exhibit(s) 34, # 35 Exhibit(s) 45, # 36 Exhibit(s) 36, # 37 Exhibit(s) 37, # 38 Exhibit(s) 38). (Gilinsky, Marshall) Modified text on 9/15/2014 (lmb). (Entered: 09/11/2014) |
| 09/12/2014 | 129 | | NOTICE OF HEARING ON MOTION 125 MOTION for Summary Judgment : Motion Hearing set for 10/23/2014 11:00 AM in Courtroom 7D (STP) before Senior Judge Paul A. Magnuson. (Boley, Patrick) (Entered: 09/12/2014) |
| 09/15/2014 | 130 | | REPLY re 112 MOTION FOR 28 U.S.C. § 1292(b) CERTIFICATION OF THE COURTS JULY 3, 2014 ORDER OR FOR CERTIFICATION OF A QUESTION OF LAW TO THE DELAWARE SUPREME COURT filed by ACE American Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Saltzman–Jones, Tiffany) (Entered: 09/15/2014) |
| 09/15/2014 | 131 | | REPLY re 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on |

| | | | |
|---|---|---|---|
| | | | the Pleadings. filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 09/15/2014) |
| 09/15/2014 | 132 | | Second Declaration of James Sandnes in Support of 109 Defendant Indian Harbor Insurance Companys Motion for 28 U.S.C. 1292(B) Certification of the Courts Order on Motion for Judgment on the Pleadings. filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) A)(Sandnes, James) (Entered: 09/15/2014) |
| 10/02/2014 | 133 | | MEMORANDUM in Opposition re 125 MOTION for Summary Judgment filed by ACE American Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Saltzman−Jones, Tiffany) (Entered: 10/02/2014) |
| 10/02/2014 | 134 | | AFFIDAVIT of Tiffany Saltzman−Jones in OPPOSITION TO 125 MOTION for Summary Judgment filed by ACE American Insurance Company. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 Exhibit(s) F, # 7 Exhibit(s) G)(Saltzman−Jones, Tiffany) (Entered: 10/02/2014) |
| 10/02/2014 | 135 | | MEMORANDUM in Opposition re 125 MOTION for Summary Judgment filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Sandnes, James) (Entered: 10/02/2014) |
| 10/02/2014 | 136 | | Declaration of James Sandnes in Support of 135 Memorandum in Opposition to Motion filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) A − Part 1 of 6, # 2 Exhibit(s) A − Part 2 of 6, # 3 Exhibit(s) A − Part 3 of 6, # 4 Exhibit(s) A − Part 4 of 6, # 5 Exhibit(s) A − Part 5 of 6, # 6 Exhibit(s) A − Part 6 of 6, # 7 Exhibit(s) B, # 8 Exhibit(s) C)(Sandnes, James) (Entered: 10/02/2014) |
| 10/02/2014 | 137 | | AFFIDAVIT of William Stanford in OPPOSITION TO 125 MOTION for Summary Judgment filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) 1, # 2 Exhibit(s) 2, # 3 Exhibit(s) 3)(Sandnes, James) (Entered: 10/02/2014) |
| 10/02/2014 | 138 | | AFFIDAVIT of Mark Vandevanter in OPPOSITION TO 125 MOTION for Summary Judgment filed by Indian Harbor Insurance Company. (Sandnes, James) (Entered: 10/02/2014) |
| 10/15/2014 | 139 | | MEMORANDUM AND ORDER: 1. Denying Indian Harbor's Motion for Certification under 28 U.S.C. Section 1292(b) 109 ; and 2. Denying ACE American's Motion for Certification under 28 U.S.C. Section 1292(b) or for Certification to the Delaware Supreme Court 112 . (Written Opinion). Signed by The Hon. Paul A. Magnuson on 10/15/2014. (LLM) (Entered: 10/15/2014) |
| 10/16/2014 | 140 | | DOCUMENT FILED IN ERROR−WILL REFILE − REPLY re 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) Modified text on 10/16/2014 (MMP). (Entered: 10/16/2014) |
| 10/16/2014 | 141 | | REPLY re 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count |

| | | | |
|---|---|---|---|
| | | | Compliance Certificate)(Gilinsky, Marshall) (Entered: 10/16/2014) |
| 10/16/2014 | 142 | | AFFIDAVIT of Vivian C. Michael in SUPPORT OF 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C, # 4 Exhibit(s) D, # 5 Exhibit(s) E, # 6 Exhibit(s) F, # 7 Exhibit(s) G, # 8 Exhibit(s) H, # 9 Exhibit(s) I, # 10 Exhibit(s) J). (Gilinsky, Marshall) Modified text on 10/17/2014 (lmb). (Entered: 10/16/2014) |
| 10/23/2014 | 143 | | TEXT ONLY ENTRY: Minute Entry for proceedings held before Judge Paul A. Magnuson: Motion Hearing held on 10/23/2014 re 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association. Motion taken under advisement. (Court Reporter Ron Moen) (JEP) Modified text on 10/23/2014 (lmb). (Entered: 10/23/2014) |
| 11/07/2014 | 144 | | LETTER TO DISTRICT JUDGE by Indian Harbor Insurance Company *Submitting Supplemental Authority*. (Schwartz, Amy) (Entered: 11/07/2014) |
| 11/10/2014 | 145 | | LETTER TO DISTRICT JUDGE by U.S. Bancorp, U.S. Bank National Association *in Response to #144 LETTER TO DISTRICT JUDGE by Indian Harbor Insurance Company Submitting Supplemental Authority*. (Gilinsky, Marshall) (Entered: 11/10/2014) |
| 11/25/2014 | 146 | | NOTICE by Indian Harbor Insurance Company *Notice of Change of Name of Law Firm* (Sandnes, James) (Entered: 11/25/2014) |
| 12/16/2014 | 147 | | DOCUMENT FILED IN ERROR. RE–FILED AT 148 . ORDER granting 125 Motion for Summary Judgment (Written Opinion). Let Judgment Be Entered Accordingly. Signed by Judge Paul A. Magnuson on December 16, 2014. (ALT) Modified text on 12/16/2014 (lmb). (Entered: 12/16/2014) |
| 12/16/2014 | 148 | 33 | ORDER GRANTING 125 MOTION for Summary Judgment filed by U.S. Bancorp, U.S. Bank National Association (Written Opinion). Let Judgment Be Entered Accordingly. Signed by Judge Paul A. Magnuson on December 16, 2014. (ALT) (Entered: 12/16/2014) |
| 12/16/2014 | 149 | 52 | JUDGMENT (Attachments: # 1 Civil Notice – appeal)(lmb) (Entered: 12/16/2014) |
| 01/13/2015 | 150 | | MOTION to Alter/Amend/Correct Judgment by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 01/13/2015) |
| 01/13/2015 | 151 | | MEET and CONFER STATEMENT re 150 Motion to Alter/Amend/Correct Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 01/13/2015) |
| 01/13/2015 | 152 | | AFFIDAVIT of Sarah Stroebel in SUPPORT OF 150 MOTION to Alter/Amend/Correct Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 Exhibit(s) A). (Gilinsky, Marshall) Modified text on 1/13/2015 (lmb). (Entered: 01/13/2015) |
| 01/13/2015 | 153 | | MEMORANDUM in Support re 150 MOTION to Alter/Amend/Correct Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 01/13/2015) |

| | | | |
|---|---|---|---|
| 01/14/2015 | 154 | | NOTICE OF CIVIL MOTION BRIEFING SCHEDULE. The Plaintiff's Motion to Amend the Judgment (Doc. No. 150) will be taken on the papers. Opposition papers due 1/20/2015 (see Notice). (JEP) (Entered: 01/14/2015) |
| 01/20/2015 | 155 | | MEMORANDUM in Opposition re 150 MOTION to Alter/Amend/Correct Judgment filed by ACE American Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Saltzman–Jones, Tiffany) (Entered: 01/20/2015) |
| 01/20/2015 | 156 | | AFFIDAVIT of Tiffany Saltzman–Jones in OPPOSITION TO 150 MOTION to Alter/Amend/Correct Judgment filed by ACE American Insurance Company. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B, # 3 Exhibit(s) C)(Saltzman–Jones, Tiffany) (Entered: 01/20/2015) |
| 01/20/2015 | 157 | | AFFIDAVIT of John F. Varley, III in OPPOSITION TO 150 MOTION to Alter/Amend/Correct Judgment filed by ACE American Insurance Company. (Saltzman–Jones, Tiffany) (Entered: 01/20/2015) |
| 01/20/2015 | 158 | | MEMORANDUM in Opposition re 150 MOTION to Alter/Amend/Correct Judgment *(Partial Opposition)* filed by Indian Harbor Insurance Company. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Schwartz, Amy) (Entered: 01/20/2015) |
| 01/20/2015 | 159 | | Declaration of William Stanford in Support of 158 Memorandum in Opposition to Motion filed by Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) 1–2, # 2 Exhibit(s) 3–7)(Schwartz, Amy) (Entered: 01/20/2015) |
| 01/27/2015 | 160 | | REPLY re 150 MOTION to Alter/Amend/Correct Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Attachments: # 1 LR7.1/LR72.2 Word Count Compliance Certificate)(Gilinsky, Marshall) (Entered: 01/27/2015) |
| 01/27/2015 | 161 | | AFFIDAVIT of Marshall Gilinsky in SUPPORT OF 150 MOTION to Alter/Amend/Correct Judgment filed by U.S. Bancorp, U.S. Bank National Association. (Gilinsky, Marshall) (Entered: 01/27/2015) |
| 03/19/2015 | 162 | 54 | MEMORANDUM AND ORDER: Granting U.S. Bank's Motion to Amend the Judgment 150 as specifically set forth in the Order. LET JUDGMENT BE ENTERED ACCORDINGLY. Signed by The Hon. Paul A. Magnuson on 03/19/2015. (LLM) (Entered: 03/19/2015) |
| 03/20/2015 | 163 | 69 | JUDGMENT. (Attachments: # 1 Civil Notice – appeal). (lmb) (Entered: 03/20/2015) |
| 04/02/2015 | 164 | | STIPULATION re 163 Judgment *STAYING ENFORCEMENT OF THE JUDGMENT PURSUANT TO FED. R. CIV. P. 62(d)* by Indian Harbor Insurance Company. Jointly Signed by U.S. Bank National Association, U.S. Bancorp, and Indian Harbor Insurance Company. (Attachments: # 1 Exhibit(s) A, # 2 Exhibit(s) B)(Schwartz, Amy) (Entered: 04/02/2015) |
| 04/02/2015 | 165 | | CERTIFICATE OF SERVICE ON PROPOSED ORDER by Indian Harbor Insurance Company re 164 Stipulation, (Schwartz, Amy) (Entered: 04/02/2015) |
| 04/02/2015 | 166 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE OF APPEAL TO 8TH CIRCUIT as to <u>148</u> Order, <u>163</u> Judgment, <u>162</u> Order on Motion to Alter Judgment, <u>105</u> Order on Motion for Judgment on the Pleadings,,, <u>149</u> Judgment by Indian Harbor Insurance Company. Filing fee $ 505, receipt number 0864−4370270. (Attachments: # <u>1</u> Appellant's Form A)(Schwartz, Amy) (Entered: 04/02/2015) |
| 04/02/2015 | <u>167</u> | | ORDER STAYING ENFORCEMENT OF THE JUDGMENT. Signed by Judge Paul A. Magnuson on 4/2/2015. (JEP) (Entered: 04/02/2015) |
| 04/03/2015 | | | NOTICE to USCA of subsequent filing in a civil case, Re: Order <u>167</u> . (lmb) (Entered: 04/03/2015) |
| 04/03/2015 | <u>168</u> | | TRANSMITTAL OF APPEAL LETTER TO U.S. COURT OF APPEALS, 8TH CIRCUIT, Re: Notice of Appeal to 8th Circuit <u>166</u> . (lmb) (Entered: 04/03/2015) |
| 04/03/2015 | 169 | | USCA Case Number 15−1691 for <u>166</u> Notice of Appeal to 8th Circuit, filed by Indian Harbor Insurance Company. (LPH) (Entered: 04/07/2015) |
| 04/17/2015 | <u>170</u> | | STIPULATION *to Extend Time for Filing of Notice of Appeal* by ACE American Insurance Company. Jointly Signed by U.S. Bancorp and U.S Bank National Association. (Saltzman−Jones, Tiffany) (Entered: 04/17/2015) |
| 04/17/2015 | <u>171</u> | | ORDER for ACE American Insurance Company to extend the time for filing a notice of Appeal to 5/19/2015. Signed by Judge Paul A. Magnuson on 4/17/2015. (JEP) (Entered: 04/17/2015) |
| 04/17/2015 | | | NOTICE to USCA of subsequent filing in a civil case, Re: Stipulation <u>170</u> , Order <u>171</u> . (lmb) (Entered: 04/17/2015) |
| 04/21/2015 | <u>172</u> | | NOTICE of Filing of Official Transcript. This filing has 1 transcript(s) associated with it. (TSS) (Entered: 04/21/2015) |
| 04/21/2015 | <u>173</u> | | TRANSCRIPT of Motions Hearing held on 6/18/2014 before Senior Judge Paul A. Magnuson. (39 pages). Court Reporter: Ron Moen (E−mail: Ron_Moen@mnd.uscourts.gov / Telephone: 612−664−5026). Redaction Request due 5/12/2015. Redacted Transcript Deadline set for 5/22/2015. Release of Transcript Restriction set for 7/20/2015. For information on redaction procedures, please review <u>Local Rule 5.5</u>. (TSS) (Entered: 04/21/2015) |
| 04/21/2015 | <u>174</u> | | NOTICE of Filing of Official Transcript. This filing has 1 transcript(s) associated with it. (TSS) (Entered: 04/21/2015) |
| 04/21/2015 | <u>175</u> | | TRANSCRIPT of Motions Hearing held on 10/23/2014 before Senior Judge Paul A. Magnuson. (44 pages). Court Reporter: Ron Moen (E−mail: Ron_Moen@mnd.uscourts.gov / Telephone: 612−664−5026). Redaction Request due 5/12/2015. Redacted Transcript Deadline set for 5/22/2015. Release of Transcript Restriction set for 7/20/2015. For information on redaction procedures, please review <u>Local Rule 5.5</u>. (TSS) (Entered: 04/21/2015) |
| 04/21/2015 | | | NOTICE to USCA of subsequent filing in a civil case, Re: Transcript <u>173</u> , Notice of Filing of Official Transcript <u>174</u> , Notice of Filing of Official Transcript <u>172</u> , Transcript <u>175</u> . (lmb) (Entered: 04/21/2015) |

| 05/19/2015 | <u>176</u> | 71 | NOTICE OF APPEAL TO 8TH CIRCUIT as to <u>148</u> Order, <u>163</u> Judgment, <u>162</u> Order on Motion to Alter Judgment, <u>105</u> Order on Motion for Judgment on the Pleadings, <u>149</u> Judgment by ACE American Insurance Company. Filing fee $ 505, receipt number 0864–4429661. (Attachments: # <u>1</u> Appellant's Form A)(Saltzman–Jones, Tiffany) (Entered: 05/19/2015) |
|---|---|---|---|
| 05/19/2015 | <u>177</u> | | DOCUMENT FILED IN ERROR–REFILED AT <u>178</u> . TRANSMITTAL OF APPEAL LETTER TO U.S. COURT OF APPEALS, 8TH CIRCUIT, Re: Notice of Appeal to 8th Circuit <u>176</u> . (lmb) Modified text on 5/19/2015 (lmb). (Entered: 05/19/2015) |
| 05/19/2015 | <u>178</u> | 74 | Amended TRANSMITTAL OF APPEAL LETTER TO U.S. COURT OF APPEALS, 8TH CIRCUIT, Re: Notice of Appeal to 8th Circuit <u>176</u> . (lmb) (Entered: 05/19/2015) |

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Bank National Association and                    Case No.: 12-cv-3175 (PAM/JSM)
U.S. Bancorp,

                            Plaintiffs,

v.                                                    **MEMORANDUM AND ORDER**

Indian Harbor Insurance Company and
ACE American Insurance Company,

                            Defendants.

_____

        This matter is before the Court on Indian Harbor's and ACE American's Motions for

Judgment on the Pleadings.  For the reasons that follow, the Court denies the Motions.

**BACKGROUND**

        Beginning in 2009, three class actions were brought against U.S. Bank for

overcharging overdraft fees to its customers.[1]   (Compl. (Docket No. 1) ¶¶ 43-44.)

Specifically, the class actions alleged that U.S. Bank re-ordered customers' debit-card

transactions from highest amount to lowest amount (instead of chronologically), posted the

transactions to customers' checking accounts in that order, and allowed the accounts to be

overdrawn—thereby creating the most overdrafts and maximizing the overdraft fees assessed

on its customers.  (Id. ¶ 46.)  The class actions also alleged that U.S. Bank misrepresented

_____

        [1] The three class actions were Speers v. U.S. Bank, N.A., No. 3:09-cv-00409-HU (D.
Or. filed April 17, 2009); Waters v. U.S. Bank, N.A., No. 3:09-cv-02071-JSW (N.D. Cal.
filed May 12, 2009); and Brown v. U.S. Bank, N.A., No. 2:10-cv-00356-RMP (E.D. Wash.
filed Oct. 13, 2010).

its overdraft policy of high-to-low posting to its customers.  (Id.)  The class actions asserted a variety of common-law and statutory claims and sought the return of the excess overdraft fees collected by U.S. Bank.  (Id.)  Eventually, the class actions were transferred to a multi-district litigation in the Southern District of Florida.[2]  (Id. ¶ 45.)  And in 2013, U.S. Bank settled the class actions for $55 million.  (Id. ¶¶ 51-54.)

U.S. Bank then made an insurance claim to Indian Harbor and ACE American (the "Insurers") for coverage of the amount paid to defend against and settle the class actions. (Id. ¶ 58.)  U.S. Bank had purchased a professional-liability insurance policy from Indian Harbor for primary coverage with a $20 million liability limit, subject to a $25 million deductible.  (Id. ¶¶ 17-18, Exs. A-B.)  U.S. Bank also had purchased a similar policy from ACE American for excess coverage with a $15 million liability limit.  (Id. ¶¶ 39-40, Exs. C-D.)  Within those policy terms, U.S. Bank demanded coverage for more than the $25 million deductible but less than the total $35 million liability limit, or $30 million plus defense costs. (Id. ¶¶ 62, 66.)

The Insurers denied U.S. Bank's claim, primarily on the ground that the settlement was not a covered loss under the insurance policies.  (Id. ¶¶ 59, 63.)  The policies granted coverage only for a "Loss", and they defined "Loss" as "the total amount which [U.S. Bank] becomes legally obligated to pay on account of each Claim . . . made against [U.S. Bank] for Wrongful Acts . . . including, but not limited to, damages, judgments, settlements, costs,

---

[2]  See In re Checking Account Overdraft Litig., No. 1:09-md-02036-JLK (S.D. Fla.).

2

MAY 19 2015  p 23

pre-judgment and post-judgment interest and Defense Costs." (<u>Id.</u> ¶¶ 19-21.)  The policies limited the "Loss" definition to omit, as relevant here, either "[m]atters which are uninsurable under the law pursuant to which this Policy is construed" (the "Uninsurable Provision") or "principal, interest, or other monies either paid, accrued, or due as the result of any loan, lease or extension of credit by [U.S. Bank]" (the "Extension-of-Credit Provision"). (<u>Id.</u> ¶ 22.)  And the policies excluded from coverage claims "brought about or contributed in fact by any . . . profit or remuneration gained by [U.S. Bank] or to which [U.S. Bank] is not legally entitled . . . as determined by a final adjudication in the underlying action" (the "Ill-Gotten Gains Provision").  (<u>Id.</u> ¶ 27.)  The Insurers maintained that the Uninsurable Provision encompassed the settlement as legally uninsurable restitution.  (<u>Id.</u> ¶¶ 59, 63.)

U.S. Bank disagreed and, in December 2012, sued the Insurers for breach of contract and a declaratory judgment.  (<u>Id.</u> ¶¶ 67-83.)  U.S. Bank claimed that the settlement falls within the policies' definition of "Loss" and is thus covered, that the Insurers must pay the covered amount, that their refusal to do so is a breach of the policies, and that they are responsible for the resulting damages.  (<u>Id.</u>)  The Insurers now move for judgment on the pleadings.

**DISCUSSION**

Judgment on the pleadings should be granted if the moving party clearly establishes that there are no material issues of fact and that it is entitled to judgment as a matter of law. <u>Poehl v. Countrywide Home Loans, Inc.</u>, 528 F.3d 1093, 1096 (8th Cir. 2008).  When evaluating a motion for judgment on the pleadings, the Court must accept as true all facts

3

pleaded by the non-moving party and grant all reasonable inferences from the pleadings in that party's favor.  Faibisch v. Univ. of Minn., 304 F.3d 797, 803 (8th Cir. 2002).  While the Court generally must ignore materials outside the pleadings, it may consider "some public records, materials that do not contradict the complaint, or materials that are necessarily embraced by the pleadings."  Saterdalen v. Spencer, 725 F.3d 838, 840-41 (8th Cir. 2013).

The material facts, as pertinent to these motions, are undisputed.  The issue that remains is whether, as a matter of law, the settlement is a covered loss under the insurance policies.  Whether the policies cover the settlement turns on the terms of the policies themselves.

When interpreting an insurance policy, the Court—a federal court sitting in diversity—applies state substantive law.  E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 663 (8th Cir. 2012).  The policies are governed by Delaware law.  (Compl. ¶ 23.)  Under Delaware law, interpretation of an insurance policy is a question of law.  Rhone-Poulenc Basic Chemicals Co. v. Am. Motorist Ins. Co., 616 A.2d 1192, 1195 (Del. 1992).  Delaware courts interpret an insurance policy, like all contracts, "in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage."  Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146, 1149 (Del. 1997).  If the policy language is clear and unambiguous, its plain meaning must be enforced.  ConAgra Foods, Inc. v. Lexington Ins. Co., 21 A.3d 62, 69 (Del. 2011).  But if the policy language is ambiguous—in that it is susceptible to two or more reasonable interpretations—the principle of *contra proferentem* dictates that the policy is to be construed

against the insurer who drafted it.  Id.

In asserting that the policies do not cover the settlement, the Insurers rely on two provisions: the Uninsurable Provision and the Extension-of-Credit Provision.

## I.      Uninsurable Provision

The Insurers principally argue that the policies do not cover the settlement under the Uninsurable Provision.  According to the Insurers, the settlement is restitutionary, and restitution is uninsurable as a matter of law.  The Insurers highlight several court decisions that have rejected insurance coverage for restitution on the basis that returning money or property to which one is not legally entitled can never constitute a loss.  Two aspects of the policies' clear language, however, contradict the Insurers' argument.

First, the settlement is not uninsurable under Delaware law because no Delaware authority has held that restitution is uninsurable as a matter of law.  The Uninsurable Provision only carves out from the definition of "Loss" those "[m]atters which are uninsurable under the law pursuant to which this Policy is construed," or Delaware law.  The Insurers have failed to cite, and the Court cannot locate, any Delaware authority deeming restitution uninsurable.   Delaware courts have scrutinized public-policy bars against insurance coverage in similar contexts, only to conclude that public policy did not prohibit coverage.  See, e.g., Whalen v. On-Deck, Inc., 514 A.2d 1072, 1073-74 (Del. 1986) (concluding that public policy did not bar insurance coverage for punitive damages); Wilson v. Chem-Solv, Inc., No. 85C-MY-1, 1988 WL 109375, at *1 (Del. Super. Ct. Oct. 14, 1988) (concluding that public policy did not bar insurance coverage for civil penalties assessed for

5

pollution).  Yet neither Delaware statute nor case law expressly precludes insurance coverage for settlements constituting restitution.

Both parties speculate as to how a Delaware court, if confronted with the issue directly, would rule on the insurability of restitution.  U.S. Bank suggests that Delaware courts do not readily void insurance coverage based on public-policy considerations due to their "pro-contractarian," "pro-banking," and "pro-policyholder" tilt.  And the Insurers insist that Delaware courts would simply follow the law of other States that forbid coverage.  The Court finds none of these reasons compelling enough to support holding, as a matter of first impression, that Delaware law prevents parties from contracting to insure settlements constituting restitution.

Second, the policies exclude from coverage restitution resulting from a final adjudication and by implication include within coverage restitution stemming from a settlement.  The Ill-Gotten Gains Provision excludes from coverage money to which U.S. Bank "is not legally entitled" only "as determined by a final adjudication in the underlying action."  This provision shows not merely that the parties contemplated the possibility of coverage for restitution, but that they agreed coverage would exist unless the restitution was imposed by a final adjudication.  When an underlying action alleging ill-gotten gains settles before trial, there is no final adjudication in that action.  See Clarendon Am. Ins. Co., No. 04C-11-167, 2008 WL 2583007, at *7 (Del. Super. Ct. June 25, 2008).  So here, where the class actions alleging ill-gotten gains were settled before trial, there is no final adjudication and the settlement is not excluded from coverage.

The Insurers vehemently dispute this interpretation of the Ill-Gotten Gains Provision. The Insurers agree that the provision would not exclude coverage because there has been no final adjudication.  But the Insurers contend that all that means is that the exclusion is irrelevant, not that it implicitly establishes coverage.  Put differently, the Insurers assert that U.S. Bank is equating a coverage exclusion with a coverage grant, and that the former cannot create the latter.

To be sure, coverage logically must be granted according to the definition of "Loss" before an exclusion can negate that coverage.  Yet the definition of "Loss" must be interpreted consistently with all provisions of the policy—even the exclusions.  See O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 287 (Del. 2001) (stating that the provisions of insurance policies must be read "as a whole" and may not be rendered "meaningless"); Westfield Ins. Co. v. Robinson Outdoors, Inc., 700 F.3d 1172, 1175 (8th Cir. 2012) (explaining that exclusions equally affect the scope of coverage).  The Insurers' proposed interpretation fails to do just that.  Because the parties expressly excluded any restitution resulting from a final adjudication through the Ill-Gotten Gains Provision, they must have intended to include any restitution not resulting from a final adjudication (say, a settlement) within the definition of "Loss".  And to interpret the Uninsurable Provision to always preclude coverage for restitution would nullify the Ill-Gotten Gains Provision, which plainly says that only a final adjudication precludes coverage for restitution.  The provision must have effect.

7

The Insurers further contend that a line of cases starting with the Seventh Circuit's decision in Level 3 Communications, Inc. v. Federal Insurance Co., 272 F.3d 908 (7th Cir. 2001), support the proposition that, despite clear policy language to the contrary, restitution is uninsurable.  In Level 3, the insured claimed coverage for the settlement of a securities-fraud action.  Id. at 909.  The insurance company responded that the settlement was restitutionary and not a covered loss.  Id. at 909-10.  The Seventh Circuit agreed, concluding that a "loss" within the meaning of an insurance contract cannot include the restoration of an ill-gotten gain.  Id. at 910.  In reaching that conclusion, the Seventh Circuit reasoned that insurance is "designed to cover only losses that injure the insured," and "[a]n insured incurs no loss within the meaning of the insurance contract by being compelled to return property that it had stolen."  Id. at 910-11.  The Seventh Circuit also rejected the notion that a judgment was required to determine that the settlement was not a covered loss, stating that regardless of whether the payment resulted from a settlement or a judgment, the insured had to disgorge profits that allegedly were improperly obtained.  Id. at 911-12.

The Court acknowledges the rule of Level 3 and its progeny that restitution is generally uninsurable.  An insured incurs no loss when it unlawfully takes money or property and is forced to return it.  Asking the insurance company to pick up the tab would only bestow an unjustified windfall on the insured.  But virtually all cases the Insurers cite that follow Level 3 are distinguishable because they involved policies without a specific provision requiring a "final adjudication."  The parties here agreed that the Level 3 rule would only control if a final adjudication—not a settlement—resolved that U.S. Bank was

MAY 19 2015  p 29

not legally entitled to the overdraft fees and must return them.  The parties knew about the Level 3 decision when they executed the policies and still decided to cover a settlement constituting restitution absent a final adjudication.  Without governing Delaware law or controlling policy language requiring otherwise, the parties' agreement must be enforced. See ConAgra Foods, 21 A.3d at 69 (stating that the plain meaning of clear policy language must be enforced).

In sum, the Insurers' reliance on the Uninsurable Provision to assert that the settlement is not a covered loss under the policies is misplaced.  Delaware law does not prohibit insurance for restitution and the parties agreed that restitution is insurable when, as here, the underlying allegations of ill-gotten gains were not finally adjudicated.

## II.    Extension-of-Credit Provision

The Insurers also argue that the policies do not cover the settlement under the Extension-of-Credit Provision.  The Insurers contend that the settlement stems from U.S. Bank's overdraft policy of high-to-low posting, and that overdraft protection constitutes an extension of credit to its customers.  So, say the Insurers, the settlement was paid as a result of an extension of credit, which is not a covered loss under the policies.

The Insurers are right that the Extension-of-Credit Provision omits from the policies' definition of "Loss" money paid "as a result of any loan, lease or extension of credit" by U.S. Bank.  The Insurers also are right that at least one court has held that a bank's practice of covering customer overdrafts constitutes a loan to its customers for insurance purposes.  See Affilliated Bank/Morton Grove v. Hartford Accident & Indem. Co., No. 91-4446, 1992 WL

91761, at *4 (N.D. Ill. Apr. 22, 1992).  But in interpreting and applying the Extension-of-Credit Provision to preclude coverage of the settlement, the Insurers are wrong in two ways.

First, the Insurers' interpretation of the Extension-of-Credit Provision is overbroad and untenable. See Penn Mut. Life Ins., 695 A.2d at 1149 (stating that insurance policies must be interpreted "in a common sense manner").  It is overbroad because the provision fundamentally is designed to prevent U.S. Bank from obtaining insurance coverage for losses due to unpaid loans, which are not at issue here.  And it is untenable because, taken to its extent, the provision would bar coverage of any professional-liability claim relating to U.S. Bank's lending operations.  The parties could not have intended to exclude from coverage such a large swath of potential claims.

Second, the Insurers' application of the Extension-of-Credit Provision erroneously assumes that the settlement was based on an extension of credit.  The class actions alleged that the overdraft fees were charged against transactions while there still were positive balances in customers' accounts—before any overdraft protection was extended.  Thus, the assessment of those fees, and their repayment as required by the settlement, were based on the use of high-to-low posting and not on an extension of credit.

For those two reasons, the Insurers' reliance on the Extension-of-Credit Provision to assert that the settlement is not a covered loss under the policies is likewise misplaced.

MAY 19 2015  p 31

**CONCLUSION**

At this stage of the proceedings, the Insurers have not clearly established as a matter of law that either the Uninsurable Provision or the Extension-of-Credit Provision prevents the settlement from being a covered loss under the insurance policies.  Accordingly, **IT IS HEREBY ORDERED** that:

1. Indian Harbor's Motion for Judgment on the Pleadings (Docket No. 46) is **DENIED**; and

2. ACE American's Motion for Judgment on the Pleadings (Docket No. 48) is **DENIED**.


Dated: <u>July 3, 2014</u>

       *s/ Paul A. Magnuson*
       Paul A. Magnuson
       United States District Court Judge

MAY 19 2015  p 32

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Bank National Association and         Case No. 12-cv-3175 (PAM/JSM)
U.S. Bancorp,

           Plaintiffs,

v.                     **MEMORANDUM AND ORDER**

Indian Harbor Insurance Company and
ACE American Insurance Company,

           Defendants.
_____

This matter is before the Court on U.S. Bank's Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

This is a fiercely contested insurance case. U.S. Bank National Association and U.S. Bancorp (collectively "U.S. Bank") are suing Indian Harbor Insurance Company and ACE American Insurance Company (collectively the "Insurers") for coverage of both $30 million out of a $55 million settlement payment and related defense costs in an overdraft-fee dispute. Though the issues are complicated, the facts are straightforward.

**A.**     **Overdraft Fees**

U.S. Bank, like many banks, offers overdraft protection to its customers with checking accounts. When customers attempt transactions for more money than is in their accounts, they overdraw the accounts. As a service, U.S. Bank pays the transactions. To compensate for that service, U.S. Bank charges a fee for each overdraft. Customers are

assessed overdraft fees for transactions that initially overdraw their accounts and for additional transactions until they deposit funds to cover the overdrafts.

Because U.S. Bank charges customers overdraft fees for transactions that either cause their accounts to be overdrawn or happen while their accounts are overdrawn, the point at which the accounts become overdrawn—and thus the order in which the transactions post to the accounts—matters.  If smaller transactions post before larger transactions, the accounts will deplete and become overdrawn at a slower rate, fewer transactions will remain to post after the accounts became overdrawn, and fewer overdraft fees will be assessed for the remaining transactions.  But if larger transactions post before smaller transactions, the opposite will occur.

To illustrate, take this example.  A customer has $200 in her checking account.  Her bank charges a $25 fee each time she overdraws the account.  One day, she makes five purchases with her debit card in this order: $4 café Americano, $20 dozen doughnuts for the office, $30 birthday gift for her daughter, $300 airplane ticket to Florida, and $50 theater tickets.  If the transactions post to her account from smallest to largest, only the airplane ticket will overdraw the account and incur one overdraft fee of $25.  If the transactions post chronologically, both the airplane ticket and the theater tickets will overdraw the account and incur two overdraft fees of $50.  And if the transactions post from largest to smallest, all the transactions will overdraw the account and incur five overdraft fees of $125.

**B.    Underlying Class Actions**

Beginning in 2009, three class actions were brought against U.S. Bank for overcharging overdraft fees to its customers.[1]  (Gilinsky Aff. (Docket No. 128) Exs. 1-3.) In particular, the class actions alleged that U.S. Bank unlawfully engaged in high-to-low posting—in that it posted customers' debit-card transactions to their checking accounts from largest to smallest—to create the most overdrafts and maximize the assessed overdraft fees.  (Id.)  The class actions also alleged that U.S. Bank inadequately disclosed to its customers that it posted their transactions from high to low.  (Id.)  The class actions asserted claims for breach of contract, unconscionability, conversion, and unjust enrichment; and sought remedies of declaratory relief, return of the excess overdraft fees, and damages.  (Id.)  Eventually, the class actions were transferred to a multi-district litigation in the Southern District of Florida.[2]  (Savage Aff. (Docket No. 127) ¶ 2.)

At the time, U.S. Bank maintained professional-liability insurance with the Insurers.  (Gilinsky Aff. Exs. 4-5.)  It had purchased a primary policy from Indian Harbor with a $20 million liability limit, subject to a $25 million deductible.  (Gilinsky Aff. Ex. 4.)  It had also purchased an excess policy from ACE American with a $15 million liability limit.  (Gilinsky Aff. Ex. 5.)  The policies grant coverage for "Loss which [U.S. Bank] shall become legally obligated to pay as result of any Claim first made against [it]

---

[1] The class actions were Speers v. U.S. Bank, N.A., No. 3:09-cv-409 (HU) (D. Or. filed April 17, 2009); Waters v. U.S. Bancorp, No. 3:09-cv-2071 (JSW) (N.D. Cal. filed May 12, 2009); and Brown v. U.S. Bank, N.A., No. 2:10-cv-356 (RMP) (E.D. Wash. filed Oct. 13, 2010).

[2] See In re Checking Account Overdraft Litig., No. 1:09-md-2036 (JLK) (S.D. Fla.).

during the Policy Period arising out of any Wrongful Act committed by [it] during or prior to the Policy Period while performing Professional Services." (Gilinsky Aff. Ex. 4, at 15.)  The policies further require that U.S. Bank obtain the Insurers' consent before settling a claim.  (Id. at 17.)

In 2012, U.S. Bank entered into private mediation to resolve the class actions and discovered an opportunity to reach a settlement.  (Savage Aff. ¶ 9.)  Complying with the policies, it asked the Insurers for consent.  (Id. ¶ 10.)  Indian Harbor consented to a settlement of $45 million and ACE American consented to a settlement of $60 million, yet both Insurers reserved their rights to later challenge coverage.  (Gilinsky Aff. Exs. 26-27.)  Having received the Insurers' consent, U.S. Bank settled the class actions in 2013 for $55 million.  (Gilinsky Aff. Exs. 25, 28.)  Under the settlement, U.S. Bank agreed to pay the $55 million into a fund to be allocated among the class members.  (Id.)  But U.S. Bank did not admit liability on the claims.  (Id.)  Nor did the settlement characterize the payment as restitution.  (Id.)

## C.   Current Coverage Lawsuit

U.S. Bank next sought insurance coverage from the Insurers for the amount paid to defend against and settle the class actions.  (See Savage Aff. ¶ 12.)  Within the policy terms, it demanded coverage for more than the $25 million deductible but less than the total $35 million liability limit, or $30 million plus defense costs.  (Id.)

The Insurers denied coverage, principally on the ground that the settlement was not a "Loss" under the policies.  (Id.; Gilinsky Aff. Ex. 31.)  The policies define "Loss" as "the total amount which [U.S. Bank] becomes legally obligated to pay on account of

each Claim . . . in each Policy Period . . . made against [it] for Wrongful Acts . . . including, but not limited to, damages, judgments, settlements, costs, pre-judgment and post-judgment interest and Defense Costs."  (Gilinsky Aff. Ex. 4, at 21.)  The policies except from the loss definition, as relevant here, either "[m]atters which are uninsurable under the law pursuant to which this Policy is construed" (the "Uninsurable Provision") or "principal, interest, or other monies either paid, accrued, or due as the result of any loan, lease or extension of credit by [U.S. Bank]" (the "Extension-of-Credit Provision").  (Id. at 22.)   And although it may be a loss, the policies exclude from coverage "any payment for Loss in connection with any Claim made against [U.S. Bank] . . . brought about or contributed in fact by any . . . profit or remuneration gained by [U.S. Bank] to which [it] is not legally entitled . . . as determined by a final adjudication in the underlying action" (the "Ill-Gotten Gains Provision").  (Id. at 15.)  In the Insurers' view, the Uninsurable Provision barred coverage because the settlement constitutes restitution and restitution is uninsurable as a matter of public policy.  (Gilinsky Aff. Ex. 31.)

U.S. Bank disagreed and sued the Insurers for breach of contract and a declaratory judgment.  (Compl. (Docket No. 1).)   It alleged that the settlement falls within the policies' loss definition and is covered, the Insurers must pay the covered amount, their refusal to do so is a breach of the policies, and they are responsible for the resulting damages.  (Id. ¶¶ 67-83.)  The Insurers denied the allegations.  (Ans. (Docket Nos. 24 & 33).)

The Insurers then moved for judgment on the pleadings, arguing that the settlement was not a covered loss under the policies based on the Uninsurable Provision

and the Extension-of-Credit Provision.   (See Mem. & Order (Docket No. 105) 1-3.)
Applying the policies' plain language, the Court denied judgment on the pleadings on
both bases.  (Id. at 3-11.)

Discontent with that decision, the Insurers proceeded to secure its immediate
reversal.   They first sought reconsideration of the decision, which the Court denied.
(Order (Docket No. 108).)  They also sought certification of the decision for interlocutory
appeal under 28 U.S.C. § 1292(b), and for legal resolution to the Delaware Supreme
Court, both of which the Court denied.  (Mem. & Order (Docket No. 139).)

U.S. Bank now moves for summary judgment.   Because the parties have
conducted relatively no meaningful discovery since the Court denied judgment on the
pleadings (other than the production of documents about the underlying class actions and
general claims-handling processes), the current record is effectively the same as it was
then.

**DISCUSSION**

Summary judgment should be granted if the moving party shows that there are no
genuine disputes of material fact and that it is entitled to judgment as a matter of law.
Fed. R. Civ. P. 56(a).  A fact is material if its resolution affects the outcome of the case.
Paine v. Jefferson Nat'l Life Ins. Co., 594 F.3d 989, 992 (8th Cir. 2010).  A dispute is
genuine if the evidence could cause a reasonable jury to return a verdict for either party.
Id.  When evaluating a motion for summary judgment, the Court must view the facts in
the light most favorable to the nonmoving party and draw all reasonable inferences in that
party's favor.  Marlowe v. Fabian, 676 F.3d 743, 746 (8th Cir. 2012).

The overarching issue here is whether the policies cover the settlement.  The parties do not dispute that the settlement relates to a claim made against U.S. Bank during the policy period for a wrongful act allegedly committed by it while performing professional services.  Instead, they dispute that the settlement is a loss.  Whether the settlement is a loss turns on the interpretation of the policies' definition of loss.

When interpreting an insurance policy, the Court—a federal court sitting in diversity—applies state substantive law.  E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 663 (8th Cir. 2012).  The policies are governed by Delaware law.  (Gilinsky Aff. Ex. 4, at 25.)  Under Delaware law, the interpretation of an insurance policy is a question of law.  Rhone-Poulenc Basic Chemicals Co. v. Am. Motorist Ins. Co., 616 A.2d 1192, 1195 (Del. 1992).  Delaware courts interpret an insurance policy, like all contracts, "in a common sense manner, giving effect to all provisions so that a reasonable policyholder can understand the scope and limitation of coverage." Penn Mut. Life Ins. Co. v. Oglesby, 695 A.2d 1146, 1149 (Del. 1997).  If the policy language is clear and unambiguous, its plain meaning must be enforced.  ConAgra Foods, Inc. v. Lexington Ins. Co., 21 A.3d 62, 69 (Del. 2011).  But if the policy language is ambiguous—in that it is susceptible to two or more reasonable interpretations—it is to be construed against the insurer who drafted it and for the insured.  Id.

The parties do not dispute that the settlement satisfies the policies' general loss definition, as outlined above.  Rather, they dispute that the settlement falls within one of these two exceptions to that definition: the Uninsurable Provision and the Extension-of-Credit Provision.

Pertinent to those exceptions, the material facts are undisputed.  The Insurers contend that factual disputes exist and further discovery is needed mainly on three issues: the underwriting intent of the policies, the nature and propriety of high-to-low posting and the settlement, and the account balances of customers who were assessed overdraft fees.  (See Sandnes Aff. (Docket No. 136).)  But as explained below, those issues do not raise genuine disputes of material fact because the policy language is unambiguous and extrinsic evidence of intent is inconsequential, the legality of high-to-low posting is not for the Court to determine and the settlement speaks for itself, and customers' account balances are not dispositive.

To resolve whether the policies cover the settlement, the Court is therefore left to decide, as a matter of law, whether the settlement falls within either the Uninsurable Provision or the Extension-of-Credit Provision and thus is not a loss.

**A.     Uninsurable Provision**

The Insurers primarily argue that the settlement is not a loss under the Uninsurable Provision.  According to the Insurers, the settlement requires U.S. Bank to return unlawfully assessed overdraft fees to its customers, returning something that one wrongfully took to its rightful owner constitutes restitution, and restitution is uninsurable under Delaware law.  U.S. Bank responds that high-to-low posting complies with the law, the Ill-Gotten Gains Provision indicates that coverage exists when claims alleging ill-gotten gains and seeking disgorgement of those gains are settled before a final adjudication in the underlying action, and no Delaware authority forbids insurance coverage for restitution.

### 1.      Is Restitution Insurable Under Delaware Law?

If the Insurers are correct that the settlement constitutes restitution, the Court would need to examine whether restitution is insurable under Delaware law. Unfortunately, the Insurers have failed to cite, and the Court cannot locate, any Delaware statute or case law reaching that issue.  The parties have previously speculated on how a Delaware court would rule.  U.S. Bank suggested that Delaware courts do not readily void insurance coverage based on public-policy considerations due to their "pro-contractarian," "pro-banking," and "pro-policyholder" tilt.  And the Insurers insisted that Delaware courts would simply follow the lead of other States that prohibit coverage.

But the Court need not decide the insurability of restitution under Delaware law because, even if restitution is not insurable, the policies require the settlement to actually be—and not just allegedly be—restitution to be uninsurable.  For this Motion, the Court will therefore assume without deciding that Delaware law precludes insurance coverage for restitution as a matter of public policy.  That assumption makes sense because an insured does not suffer loss when it wrongfully takes money or property and is forced to return it; asking the insurer to pick up the tab would only bestow an unjustified windfall on the insured.  See J.P. Morgan Sec. Inc. v. Vigilant Ins. Co., 21 N.Y.3d 324, 335-36 (2013) ("[A] 'loss' within the meaning of an insurance contract does not include the restoration of an ill-gotten gain." (citation and quotation marks omitted)).

Consistent with that assumption, the policies unambiguously do not cover restitution.  The Uninsurable Provision carves out from the loss definition "[m]atters

which are uninsurable" under Delaware law.  (Gilinsky Aff. Ex. 4, at 22.)  If restitution is uninsurable under Delaware law, it is obviously not a covered loss under the policies.

**2.      If Not, Does the Settlement Constitute Restitution?**

That conclusion, however, does not end the analysis.  The crux of this dispute is not whether restitution is insurable, but whether the settlement constitutes restitution.  This is because another provision in the policies, the Ill-Gotten Gains Provision, directly addresses the circumstance when an insured pursues coverage for a payment that resolves claims alleging ill-gotten gains and seeking disgorgement of those gains—or put differently, restitution.   The provision excludes from coverage a payment for loss connected to a claim resulting from money to which U.S. Bank "is not legally entitled . . . as determined by a final adjudication in the underlying action."  (Id. at 15.)  The insertion of that provision in the policies begs the question: Can a payment be restitutionary and uninsurable under the policies based on (1) a settlement resolving claims that allege ill-gotten gains and seek disgorgement of those gains or (2) a final adjudication in the underlying action determining that the allegations of ill-gotten gains have merit and ordering the disgorgement of those gains?  The policies choose the second answer.

The policies unambiguously require that a final adjudication in the underlying action determine that a payment is restitution before the payment is barred from coverage as restitution.  The Court must interpret the loss definition and its exceptions consistently with all policy provisions—even the exclusions.  See O'Brien v. Progressive N. Ins. Co., 785 A.2d 281, 287 (Del. 2001) (directing that provisions of insurance policies be read "as a whole" and not be rendered "meaningless"); Westfield Ins. Co. v. Robinson Outdoors,

Inc., 700 F.3d 1172, 1175 (8th Cir. 2012) (explaining that exclusions equally affect the scope of coverage). The Uninsurable Provision omits from coverage restitution, and the Ill-Gotten Gains Provision omits from coverage a payment that a final adjudication in the underlying action determined is restitution. If the Court interpreted the Uninsurable Provision to preclude coverage for a payment based on a settlement resolving claims for restitution, it would nullify the Ill-Gotten Gains Provision that precludes coverage for a payment based only on a final adjudication determining that the claims warrant restitution. So to interpret the two provisions consistently, the Court must read the Uninsurable Provision to bar coverage for a payment that a final adjudication in the underlying action determined is restitution.

Under that interpretation, the settlement is not a payment that a final adjudication in the underlying action determined is restitution. When an underlying action alleging ill-gotten gains and seeking disgorgement of those gains settles before trial, there is no final adjudication in that action determining that the gains were ill-gotten and ordering the return of those gains. See AT & T v. Clarendon Am. Ins. Co., No. 04C-11-167 (JRJ), 2008 WL 2583007, at *7 (Del. Super. Ct. June 25, 2008). Here, where the class actions alleging that U.S. Bank unlawfully assessed overdraft fees and seeking the return of those fees settled before trial and without an admission of liability, there was no final adjudication determining that U.S. Bank committed unlawful conduct and ordering the refund of the profits derived from that conduct. In other words, the settlement allegedly constitutes restitution but is not a final adjudication determining restitution.

The Court emphasizes that it will not automatically presume—as the Insurers do—that the settlement constitutes restitution because it resolved claims alleging ill-gotten gains and seeking disgorgement of those gains. Not only does the clear policy language, and especially the Ill-Gotten Gains Provision, prevent the Court from doing so. But the common-sense effect of a settlement does as well. If a settlement resolves claims alleging unlawful activity but excludes an admission of liability for the activity, it does not establish that the underlying allegations are true or false. See Atwell v. RHIS, Inc., 974 A.2d 148, 155 (Del. 2009) ("We cannot allow litigants to imply that one party's decision to settle means that the settling party has admitted liability."). Instead, a settlement represents the parties' willingness to resolve the claims after weighing the negotiated settlement amount against the potential judgment amount and accounting for the costs and benefits of continued litigation. That is exactly what this settlement was.[3]

### 3.    Are Any of the Insurers' Counterarguments Availing?

The Insurers quarrel with the Court's interpretation and application of the Uninsurable Provision on five noteworthy grounds.

First, the Insurers contend that the Ill-Gotten Gains Provision cannot affect the Uninsurable Provision because the Uninsurable Provision grants coverage and the Ill-Gotten Gains Provision excludes coverage. It is, say the Insurers, a maxim of insurance law that an exclusion cannot generate a grant. What the Insurers fail to recognize,

---

[3] The Court also emphasizes that it is not its role to decide whether U.S. Bank unlawfully assessed overdraft fees. As the Court reads the Ill-Gotten Gains Provision, the court in the underlying action must finally adjudicate whether the allegations of ill-gotten gains have merit, not the court in the coverage action. The Court can decide whether there was a final adjudication in the underlying action, and has determined here that there was not.

however, is that the existence of a coverage exclusion may alter the scope of a coverage grant. Parties have no reason to exclude a particular matter from coverage in an insurance policy if they did not intend that the policy initially granted coverage for that matter. Concluding to the contrary would strip the coverage exclusion of any purpose, and it must have effect. So too here. By excluding from coverage a payment that a final adjudication in the underlying action determined to be restitution, the parties implicitly granted coverage for a payment that is merely alleged to be restitution.

Second, the Insurers contend that the Ill-Gotten Gains Provision also cannot affect the Uninsurable Provision because exceptions (like the Uninsurable Provision) narrowly focus on the loss recoverable under the policies, where exclusions (like the Ill-Gotten Gains Provision) relate more broadly to claims covered by the policies. As the dispute here hinges on the whether the settlement is a loss and not a claim, the Insurers implore the Court to disregard the Ill-Gotten Gains Provision. The Court agrees that there is a distinction between a claim and a loss—the policy defines them separately and observes that a claim could include both covered and uncovered loss. The Court further agrees that the Uninsurable Provision is an exception to a loss and the Ill-Gotten Gains Provision is an exclusion to a claim.

But the Court gives no credence to the Insurers' notion that a loss exception and a claim exclusion have no bearing on each other. For one, the Insurers have presented no legal authority to support otherwise. And two, the concepts of claim and loss are connected in the context of this case. If a claim depends on the underlying allegations and a loss depends on the requested remedy, whether a loss exists first depends on

whether a claim exists because no remedy is warranted if the allegations lack merit.  Or if the allegations are for ill-gotten gains and the remedy is for disgorgement of those gains, but a final adjudication must determine whether the allegations have merit to trigger a claim exclusion, the final adjudication also impacts whether the remedy is warranted and could trigger a loss exception.  Hence, a claim exclusion can affect a loss exception.

Third, the Insurers protest that the interpretation leads to an absurd result where settlements resolving claims for restitution are loss but judgments ordering restitution are not loss.  The Insurers highlight a myriad of cases for the proposition that, in determining whether a settlement resolving claims that allege ill-gotten gains and seek disgorgement of those gains is an insurable loss, the Court must look to the nature of the underlying allegations and requested remedies and not to whether those allegations and remedies were finally adjudicated.  In short, according to the Insurers, it is irrelevant whether U.S. Bank actually did anything wrong and must pay restitution so long as the settlement resolved claims alleging wrongdoing and seeking relief that is restitutionary.

But that is not what the policies require.  As discussed at length above, the policies require that a final adjudication in the underlying action determine that claims for restitution actually warrant restitution.   Under a policy with a final-adjudication requirement, mere allegations are insufficient.  If allegations of unlawful activity are never determined to be true, a payment to dispose of those allegations is not restitution because restitution can only occur if that which is being returned was wrongfully taken.  So if U.S. Bank's assessment of overdraft fees was lawful, the return of those fees cannot be restitution because U.S. Bank is legally entitled to those fees.

In that regard, all of the cases the Insurers cite are distinguishable. Several of the cases concluding that restitution is uninsurable whether by settlement or judgment did not involve policies that include a final-adjudication requirement. See, e.g., CNL Hotels & Resorts, Inc. v. Twin City Fire Ins. Co., 291 F. App'x 220, 223-24 (11th Cir. 2008); Level 3 Commc'ns, Inc. v. Fed. Ins. Co., 272 F.3d 908, 910-12 (7th Cir. 2001). The cases holding that an allegedly restitutionary settlement is uninsurable despite policy language requiring a final adjudication failed to otherwise analyze the impact of the final-adjudication requirement. See, e.g., Dobson v. Twin City Fire Ins. Co., No. 11-cv-0192 (DOC/MLG), 2012 WL 2708392, at *9-10 (C.D. Cal. July 5, 2012); Aon Corp. v. Certain Underwriters at Lloyd's of London, No. 06-16852 (Ill. Cir. Ct. Ch. Div. Dec. 3, 2010). And the two cases barring coverage for a settlement in an overdraft-fee dispute relied on specific fee exclusions in the policies that the policies here do not contain. See PNC Fin. Servs., Grp., Inc. v. Houston Cas. Co., No. 13-cv-331, 2014 WL 2862611, at *2-3 (W.D. Pa. June 24, 2014); Fidelity Bank v. Chartis Specialty Ins. Co., No. 1:12-cv-4259 (RWS), 2013 WL 4039414, at *3-4 (N.D. Ga. Aug. 7, 2013).

Fourth, the Insurers contend that the Court is erroneously allowing parties to contract around public policy and agree to cover uninsurable restitution. See CSX Transp., Inc. v. Mass. Bay Transp. Auth., 697 F. Supp. 2d 213, 229 (D. Mass. 2010) ("Even sophisticated parties cannot contract around public policy."). But the Court does not conclude that parties may contract to insure a payment, like restitution, that is uninsurable under public policy. All the Court concludes is that parties may agree to ensure that a payment truly fits within a category of matters that are legally uninsurable.

That contractual ability does not change the categories themselves and render insurable that which is uninsurable.  If restitution is uninsurable by public policy, the parties may contract to require that the payment is actually—and not just allegedly—restitution.  That conclusion is consistent with public policy.

Finally, the Insurers warn that the interpretation will incentivize banks to settle rather than litigate these types of lawsuits to obtain coverage for restitution.  That warning echoes the sentiment expressed in other cases.  See, e.g., Level 3, 272 F.3d at 911 (declaring that it "can't be right" that coverage for restitution could pivot on whether it was made by way of settlement or judgment because the insured, "seeing the handwriting on the wall," could simply agree "to pay the plaintiffs in the fraud suit all they were asking for" and then "retain the profit it had made from a fraud" through a coverage reimbursement).  Yet insurance companies can counter that incentive by not consenting to the settlement.  The policies require that the Insurers consent before U.S. Bank may settle a claim.  If the Insurers were concerned that the settlement constituted restitution, they could have refused consent or conditioned consent on an admission of liability for wrongdoing or a stipulation that the payment was restitution.  The Insurers would have been wiser to refuse or condition consent at the outset rather than consent and later contest coverage in avoidable litigation.

Bottom line, the dispute on the Uninsurable Provision is not about whether restitution is insurable; the Court assumes that it is not.  The dispute is about whether the settlement constitutes restitution.  The clear policy language controls on that question, and requires that for a payment to be restitution, it must be based on a final adjudication

in the underlying action determining it is restitution instead of a settlement resolving claims for restitution.  Because the settlement is not a payment that a final adjudication in the underlying action determined is restitution, the Uninsurable Provision does not prevent the settlement from being a loss.

**B.      Extension-of-Credit Provision**

The Insurers alternatively argue that the settlement is not a loss under the Extension-of-Credit Provision.  They say that the settlement comprises the return of overdraft fees paid or accrued as the result of overdraft protection and overdraft protection is an extension of credit.  U.S. Bank responds that the provision contemplates losses due to unpaid loans and not fees for lending services, and the overdraft fees were assessed while customers still had positive account balances and before any overdraft protection was provided.

To be sure, the Extension-of-Credit Provision unambiguously removes from the loss definition "monies either paid, accrued, or due as the result of . . . an extension of credit."  (Gilinsky Aff. Ex. 4, at 22.)  And a few courts have held that a bank's practice of paying transactions that overdraw customers' accounts constitutes a loan to its customers for insurance purposes.  See Sayan v. Riggs Nat'l Bank of Wash., D.C., 544 A.2d 267, 269 (D.C. 1988) (stating that the "payment of an overdraft by the bank carries with it an implicit agreement by the customer to repay the loan"); Affiliated Bank/Morton Grove v. Hartford Accident & Indem. Co., No. 91-cv-4446, 1992 WL 91761, at *6 (N.D. Ill. Apr. 22, 1992) (reasoning that "an overdraft by a bank depositor is treated as a loan from the

bank to the depositor just as depositors with positive balances are considered creditors of the bank").

That said, this case is not about the provision of overdraft protection, but the assessment of overdraft fees.  The settlement resolved claims that ultimately alleged as injury that U.S. Bank overcharged overdraft fees through high-to-low posting and not that U.S. Bank offered overdraft protection in the first place.  This is a distinction that makes a difference given that an overdraft fee is simply a fee for a service and overdraft protection is likely an extension of credit.  If the settlement had compensated customers for improperly provided overdraft protection, it would have been paid as the result of a loan.  But if the settlement returned the assessed overdraft fees, as the Insurers urge, it was paid as the result of a fee.  The second scenario describes this case.

Because the settlement was not paid as the result of an extension of credit, the Extension-of-Credit Provision does not prevent the settlement from being a loss.  As the Court decides this issue on that basis, it need not address the parties' arguments about whether the provision encompasses only loan losses and whether the overdraft fees were assessed against positive account balances.

**CONCLUSION**

The settlement falls within neither the Uninsurable Provision nor the Extension-of-Credit Provision—the Insurers' only defenses to coverage—and thus is a covered loss under the policies.  The Insurers must indemnify U.S. Bank for $30 million out of the $55 million settlement payment and reimburse it for related defense costs.  Accordingly,

**IT IS HEREBY ORDERED** that U.S. Bank's Motion for Summary Judgment (Docket

No. 125) is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  _December 16, 2014_         _s/Paul A. Magnuson_
                                    Paul A. Magnuson
                                    United States District Court Judge

AO450 (Rev. 5/85)   Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## District of Minnesota

U.S. Bank National Association and
U.S. Bancorp

**JUDGMENT IN A CIVIL CASE**

V.

Indian Harbor Insurance Company and
ACE American Insurance Company

Case Number:  12-cv-3175 (PAM/JSM)

☐ **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

U.S. Bank's Motion for Summary Judgment (Docket No. 125) is **GRANTED**.

| | |
|---|---|
| December 16, 2014 | RICHARD D. SLETTEN, CLERK |
| Date | |
| | s/L. Brennan |
| | (By)                    L. Brennan,   Deputy Clerk |



# UNITED STATES DISTRICT COURT
## District of Minnesota

Warren E. Burger Federal
Building and U.S. Courthouse
316 North Robert Street
Suite 100
St. Paul, MN  55101
(651) 848-1100

U.S. Courthouse
300 South Fourth Street
Suite 202
Minneapolis, MN 55415
(612) 664-5000

Gerald W. Heaney Federal
Building and U.S.
Courthouse
515 West First Street
Suite 417
Duluth, MN 55802
(218) 529-3500

Edward J. Devitt U.S.
Courthouse and Federal
Building
118 South Mill Street
Suite 212
Fergus Falls, MN  56537
(218) 739-5758

## CIVIL NOTICE

**The appeal filing fee is $505.00.  If you are indigent, you can apply for leave to proceed in forma pauperis, ("IFP").**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only.  For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1.  Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2.  Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3.  Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4.  Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal.  This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires.  If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it.  The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

U.S. Bank National Association and                    Case No. 12-cv-3175 (PAM/JSM)
U.S. Bancorp,

                          Plaintiffs,

v.                                                    **MEMORANDUM AND ORDER**

Indian Harbor Insurance Company and
ACE American Insurance Company,

                          Defendants.
_____

        This matter is before the Court on U.S. Bank's Motion to Amend the Judgment.

For the reasons that follow, the Court grants the Motion to the extent ordered below.

**BACKGROUND**

        In this insurance case, U.S. Bank National Association and U.S. Bancorp

(collectively "U.S. Bank") sought coverage from Indian Harbor Insurance Company and

ACE American Insurance Company (collectively the "Insurers") for both $30 million out

of a $55 million settlement payment and $5 million of related defense costs in an

overdraft-fee dispute.  The Court has previously detailed the facts of the underlying

actions and current lawsuit, (see, e.g., Mem. & Order (Docket No. 148) 1-6), and will

repeat only the facts that are relevant to this Motion.

        Beginning in 2009, three class actions were brought against U.S. Bank for

allegedly overcharging overdraft fees to its customers.  (Stroebel Aff. (Docket No. 152)

¶ 2.)   At the time, U.S. Bank maintained professional-liability insurance with the

Insurers.  (Stanford Decl. (Docket No. 159) Ex. 1.)  It had purchased a primary policy

from Indian Harbor with a $20 million liability limit, subject to a $25 million deductible. (Id.)  It had also purchased an excess policy from ACE American with a $15 million liability limit.  (Id.)  The policies grant coverage for loss that U.S. Bank "shall become legally obligated to pay" based on a claim made during the policy period.  (Id. at 1.)  And the policies contain a choice-of-law provision, directing that they "shall be governed by the laws of the State of Delaware."  (Id. at 11.)  On June 29, 2012, U.S. Bank reached a "binding and enforceable" agreement in principle to settle the class actions for $55 million.  (Stroebel Aff. ¶¶ 3-4; Saltzman-Jones Aff. (Docket No. 156) Ex. B.)

While the settlement process continued, U.S. Bank filed the Complaint in this case on December 21, 2012, seeking insurance coverage from the Insurers for the amount paid to defend against and settle the class actions.  (Compl. (Docket No. 1).)   In the Complaint, U.S. Bank stated that, after notifying the Insurers of the class actions and its desire to settle them, it had "agreed to settle [the class actions] for $55 million."  (Id. ¶¶ 49-54.)  It further asserted claims for breach of contract and a declaratory judgment, alleging that the settlement fell within the policies' loss definition and was covered, the Insurers had to pay the covered amount, their refusal to do so was a breach of the policies, and they were responsible for the resulting damages.  (Id. ¶¶ 67-83.)  U.S. Bank did not serve ACE American and Indian Harbor with the Complaint until April 17 and 18, 2013, respectively.  (Summons (Docket Nos. 8, 10).)

U.S. Bank signed a written settlement agreement on February 7, 2013, and an amended version on July 2, 2013.  (Stanford Decl. ¶¶ 14-15, Ex. 5; Saltzman-Jones Aff. Ex. B.)  Under the amended version, U.S. Bank was not obligated to pay any money to

2

fund the settlement until August 9, 2013.  (Stanford Decl. ¶ 19.)  On January 6, 2014, the district court presiding over the class actions entered a final judgment approving the settlement.  (Id. Ex. 7.)

On December 16, 2014, this Court granted summary judgment in favor of U.S. Bank, holding that the settlement is a covered loss under the policies.  (Mem. & Order 6-19.)  The Court ordered that "[t]he Insurers must indemnify U.S. Bank for $30 million out of the $55 million settlement payment and reimburse it for related defense costs." (Id. at 18.)

U.S. Bank now moves to amend that judgment for an award of prejudgment interest under Minn. Stat. § 60A.0811, subd. 2(a).

**DISCUSSION**

As to prejudgment interest, the parties dispute three issues: (1) the applicable law, (2) the propriety of prejudgment interest, and (3) the amount of prejudgment interest.

**A.     The Applicable Law**

Before the Court can decide whether U.S. Bank is entitled to prejudgment interest and, if it is, how much, the Court must resolve the thornier issue of what law to apply in making those decisions.  In a diversity case like this, the Court applies substantive state law and procedural federal law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938).  For Erie purposes, prejudgment interest is a substantive matter of state law.  Emmenegger v. Bull Moose Tube Co., 324 F.3d 616, 624 (8th Cir. 2003).

The parties, however, contest which state's prejudgment-interest law should apply. U.S. Bank argues that the law of Minnesota, the forum state, governs.  The Insurers argue

3

that the law of Delaware, as designated in the policies' choice-of-law provision, governs. Indeed, the choice of law matters immensely for various reasons, not the least of which is the disparate interest rates.  <u>Compare</u> Minn. Stat. § 60A.0811, subd. 2(a) (pegging the rate for prejudgment interest in a breach-of-insurance-policy case at 10%); <u>with</u> 6 Del. C. § 2301(a) (setting the rate for prejudgment interest absent an agreement between the parties at 5% over the Federal Reserve discount rate, which is currently 0.75%).  When two or more differing states' laws could apply to a substantive issue, the Court looks to the conflict-of-law principles of the state where it sits.  <u>Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.</u>, 325 F.3d 1024, 1028 (8th Cir. 2003).

Because this case turned on insurance policies that contain a choice-of-law provision, the Court must consider the effect of that provision under Minnesota conflict-of-law principles.  Minnesota courts are "committed to the rule that parties may agree that the law of another state shall govern their agreement and will interpret and apply the law of another state where such an agreement is made."  <u>Milliken & Co. v. Eagle Packaging Co.</u>, 295 N.W.2d 377, 380 n.1 (Minn. 1980) (citation and quotation marks omitted).  That rule, of course, has an exception: Even if a contract includes a valid choice-of-law provision, Minnesota courts apply the law of the forum state to procedural matters. <u>Davis v. Furlong</u>, 328 N.W.2d 150, 153 (Minn. 1983).  Yet, unsurprisingly, an exception to that exception exists: If the parties desire that another state's law concerning procedural matters should govern, they must "expressly" state so in the choice-of-law provision.  <u>U.S. Leasing v. Biba Info. Processing Servs., Inc.</u>, 436 N.W.2d 823, 826 (Minn. App. 1989).  The choice-of-law provision here does not so state.

4

As a result, the pivotal issue is whether Minnesota law treats prejudgment interest as a procedural matter for conflict-of-law purposes.[1]  If it does, the forum state's law, or Minnesota law, applies.  If it does not, the contractually agreed-to law, or Delaware law, applies.  In resolving whether prejudgment interest is procedural under Minnesota law, the Court is bound to apply Minnesota law "as declared by its Legislature in a statute or by its highest court in a decision."  Erie, 304 U.S. at 78.

The Minnesota Supreme Court has not addressed whether prejudgment interest is a substantive or procedural matter.  But it has long distinguished between substantive law, or the law that "'creates, defines, and regulates rights,'" and procedural law, or the law that "'prescribes method[s] of enforcing the rights or obtaining redress for their invasion.'"  Meagher v. Kavli, 88 N.W.2d 871, 879-80 (Minn. 1958).  In other words, a statute that does not create a new cause of action or affect a defense is procedural.  State v. Johnson, 514 N.W.2d 551, 555 (Minn. 1994).  Consistent with that distinction between substantive and procedural matters, the Court must predict how the Minnesota Supreme Court would characterize the nature of prejudgment interest.  See Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 876 (8th Cir. 2000).

The Court concludes that prejudgment interest under Minn. Stat. § 60A.0811 is a procedural matter for Minnesota conflict-of-law purposes.  The statute allows an insured

---

[1]  That prejudgment interest is a substantive matter for Erie purposes does not automatically mean that it is also a substantive matter for conflict-of-law purposes—the two determinations are distinct.  See Sun Oil Co. v. Wortman, 486 U.S. 717, 726 (1988) (explaining that there is not "an equivalence between what is substantive under the Erie doctrine and what is substantive for the purposes of conflict of laws").

who succeeds in a commercial or professional insurance coverage lawsuit to recover prejudgment interest from the insurer:

> An insured who prevails in any claim against an insurer based on the insurer's breach or repudiation of, or failure to fulfill, a duty to provide services or make payments is entitled to recover ten percent per annum interest on monetary amounts due under the insurance policy, calculated from the date the request for payment of those benefits was made to the insurer.

Minn. Stat. § 60A.0811, subd. 2(a). The statute does not create a new cause of action or affect a defense—it assumes that the insured already prevailed on its existing claim. Rather, the statute prescribes a remedy for the insured to enforce its right to coverage under an insurance policy by providing a mechanism—interest from the date the insured requests payment—that discourages the wrongful denial of coverage and encourages the resolution of coverage disputes.

The Court's conclusion that prejudgment interest under Minn. Stat. § 60A.0811 is a procedural matter is bolstered by two decisions, one from the Minnesota Court of Appeals and the other from the Eighth Circuit, which emphatically held that prejudgment interest under Minn. Stat. § 549.09 (Minnesota's general prejudgment-interest statute) is also a procedural matter. See Zaretsky v. Molecular Biosystems, Inc., 464 N.W.2d 546 (Minn. App. 1990); Schwan's Sales Enters., Inc. v. SIG Pack, Inc., 476 F.3d 594 (8th Cir. 2007).

In Zaretsky, the Minnesota Court of Appeals confronted a compensation dispute where New Jersey law governed the substantive right of recovery but where the district court had determined, over the defendant's objection, that Minnesota law governed the

award of prejudgment interest.  464 N.W.2d at 547-48.  The court of appeals affirmed, concluding that prejudgment interest, at least when awarded under § 549.09, is procedural and therefore calculated under Minnesota law.  Id. at 549-51.

In reaching that conclusion, the court of appeals acknowledged that the statute "contains both substantive and procedural aspects," but emphasized that it reflects predominantly a procedural matter.  Id. at 549-50.  The court of appeals noted that prejudgment interest has a dual purpose: "'(1) to compensate the plaintiff for the loss of use of his money . . . and (2) to promote settlement.'"  Id. at 549 (quoting Burniece v. Ill. Farmers Ins. Co., 398 N.W.2d 542, 544 (Minn. 1987)).  And the court of appeals reasoned that the statute, when split in two parts, served both of those purposes in a procedural fashion.  Id. at 550.  The court of appeals interpreted the first part, which "provides compensation for the loss of use . . . of the plaintiff's money," to be substantive because it "appears to be an element of damages designed to make the plaintiff whole," but to also be procedural because it "affects the relationship between the parties as litigants . . . and not their relationship on the underlying matter in dispute."  Id.  By contrast, the court of appeals interpreted the second part, which it termed the "offer-counteroffer provision," to be procedural because it "promotes the early settlement of cases between litigants" and likewise "applies to the relationship of the parties as litigants . . . and is unrelated to the merits of the case."  Id.

Having analyzed both parts, the court of appeals found § 549.09 "to be more procedural than substantive in nature."  Id.  The court of appeals reiterated that although the statute "provide[s] additional compensation to the plaintiff," the award of

7

prejudgment interest as damages "is merely one effect of the procedural purpose of the statute, which is to encourage settlements." Id.

In light of the Minnesota Court of Appeals's conclusion in Zaretsky, the Eighth Circuit in Schwan's affirmed the district court's application of Minnesota law in awarding prejudgment interest under § 549.09 on a breach-of-contract claim. 476 F.3d at 595-98. The contract contained a choice-of-law provision selecting Wisconsin law to govern. Id. at 595. Nonetheless, the Eighth Circuit held that Minnesota law, the forum state's law, applied. Id. at 596-97. The Eighth Circuit cited Zaretsky to support that Minnesota courts consider prejudgment interest to be a procedural matter governed by the law of the forum state. Id. And the Eighth Circuit determined that "the issue of prejudgment interest . . . is a procedural matter for conflict-of-law purposes under Minnesota law." Id. at 597.

The Insurers insist that Zaretsky and Schwan's are distinguishable because they involve a different prejudgment-interest statute with different language. Although the statute at issue here differs somewhat from the statute at issue in Zaretsky and Schwan's, § 60A.0811 features other hallmarks that convinced the courts in Zaretsky and Schwan's that § 549.09 is procedural. Though the statute provides additional compensation to the insured, it relates to the insured and insurer as litigants and not to the merits of the case. And the statute promotes early settlement by accruing prejudgment interest from the date the insured requests payment.

In short, prejudgment interest under § 60A.0811 is a procedural matter for conflict-of-law purposes under Minnesota law. Given that the policies' choice-of-law

provision does not expressly reach procedural matters, the Court will apply Minnesota law in deciding prejudgment interest.

## B.   The Propriety of Prejudgment Interest

Having concluded that Minnesota law applies, the Court must determine whether the Insurers owe prejudgment interest under § 60A.0811.  Indian Harbor concedes that it must pay some amount of prejudgment interest.  But ACE American argues that it need not pay any prejudgment interest.  It points out that the statute allows prejudgment interest "based on the insurer's breach [of] a duty to provide services or make payments." Minn. Stat. § 60A.0811, subd. 2(a).  And it reasons that it has not breached any duty under the excess policy because, according to the policy's exhaustion provision, its coverage obligation has not yet been triggered.

ACE American's argument is too little, too late.  To be sure, § 60A.0811 warrants an award of prejudgment interest only when the insurer has wrongfully denied coverage or has otherwise breached one of its duties.  See Manitou Vill. Chalet Townhomes v. Harleysville Ins. Co., No. 12-cv-1386 (JNE/FLN), 2013 WL 1881056, at *2-3 (D. Minn. Mar. 29, 2013) report and recommendation adopted, No. 12-cv-1386 (JNE/FLN), 2013 1881605 (D. Minn. May 6, 2013) (Ericksen, J.).  Yet in granting summary judgment in U.S. Bank's favor, the Court has already held that ACE American wrongfully denied coverage to U.S. Bank for the settlement.  By neglecting to invoke the exhaustion provision in previous briefing, ACE American has waived its right to invoke the

provision now.  Thus, an award of prejudgment interest against ACE American is appropriate.[2]

## C.    The Amount of Prejudgment Interest

Applying Minnesota law, the calculation of prejudgment interest against both Insurers is relatively straightforward.  The parties agree that § 60A.0811 fixes the annual rate of prejudgment interest at 10%.  The parties disagree, however, on the dates on which the statute starts and stops accruing the prejudgment interest.

As for the starting point, U.S. Bank urges that the date is when it asked the Insurers to cover the settlement, which it says is no later than when it filed the Complaint on December 21, 2012.  The Insurers counter that the date is not until the settlement was finally approved on January 6, 2014, as only then was U.S. Bank's payment obligation in the class actions certain and any earlier would unjustifiably reward U.S. Bank for bringing a premature coverage lawsuit.  No Minnesota court has addressed the start date for accrual of prejudgment interest under § 60A.0811 when the insured requests coverage for the settlement of an underlying claim before the settlement is finally approved.  Once again, the Court must therefore predict how the Minnesota Supreme Court would resolve the issue.  See Marvin Lumber, 223 F.3d at 876.

Under Minnesota law, the goal of statutory interpretation is "to ascertain and effectuate" the Legislature's intent.  Minn. Stat. § 645.16.  When interpreting a statute,

---

[2] Neither Insurer contends that Minnesota law prohibits prejudgment interest in excess of the policy limits, and for good reason.  See Owatonna Clinic—Mayo Health Sys. v. Med. Protective Co. of Fort Wayne, Ind., 639 F.3d 806, 813-14 (8th Cir. 2011) (concluding that § 60A.0811 permits prejudgment interest in excess of a policy limit).

Minnesota courts give words and phrases their plain and ordinary meaning. Graphic Commc'ns Local 1B Health & Welfare Fund A v. CVS Caremark Corp., 850 N.W.2d 682, 689 (Minn. 2014). Further, they read the statute as a whole and give effect to all of its provisions. In re Welfare of J.J.P., 831 N.W.2d 260, 264 (Minn. 2013).

Giving effect to all of § 60A.0811, the Court concludes that the Minnesota Supreme Court would interpret the statute to start the accrual of prejudgment interest when the insured requests payment from the insurer for the claim, but no sooner than when the claim constitutes a monetary amount due under the insurance policy. The statute unambiguously calculates prejudgment interest "from the date the request for payment . . . was made to the insurer." Minn. Stat. § 60A.0811, subd. 2. But the statute also assesses the prejudgment interest "on monetary amounts due under the insurance policy." Id. In that way, the statute presumes that the insurer's request for payment relates to a claim that the policy covers. Any other interpretation, including the one advanced by U.S. Bank, would nullify that language and absurdly allow an insured to reap excessive prejudgment interest simply by requesting payment for a claim well before the insured is liable on the claim.

The Court's interpretation of § 60A.0811 is consistent with two other decisions from this District interpreting the statute. In Avon State Bank v. BancInsure, Inc., the Court found that the statute "unambiguous[ly]" calculates prejudgment interest from the date of the payment request, regardless of whether the insured "actually paid the settlement or defense costs for which it sought indemnification at the time." No. 12-cv-2557 (RHK/LIB), 2014 WL 1608262, at *2 (D. Minn. Apr. 18, 2014) (Kyle, J.). And in

11

State Bank of Bellingham v. BancInsure, Inc., the Court determined that the "plain language" of the statute measured prejudgment interest from the date the insured notified the insurer of the loss.  No. 13-cv-900 (SRN/JJG), 2014 WL 4829184, at *23 (D. Minn. Sept. 29, 2014) (Nelson, J.).  Similar to Avon and Bellingham, the Court reads the statute to start the accrual of prejudgment interest not from the date the insured pays the underlying judgment or the date the insurer denies coverage, but from the date the insured becomes liable for the judgment and the insured requests coverage from the insurer.

Here, the start date for the accrual of prejudgment interest is when U.S. Bank served ACE American and Indian Harbor with the Complaint on April 17 and 18, 2013, respectively.  The Complaint unequivocally notified the Insurers of the settlement and asked them to cover the settlement.  The mere filing of the Complaint, without more evidence, did not adequately request payment for the settlement.  U.S. Bank did not do that until it actually served the Complaint.  In addition, and consistent with the Court's summary-judgment ruling, the settlement was a covered loss under the policies at the time of service.  The policies grant coverage for loss that U.S. Bank is "legally obligated to pay" based on a claim.  When service occurred, U.S. Bank had reached a contractually binding settlement agreement and was therefore legally obligated to pay the settlement. That U.S. Bank had not yet signed a formal agreement, paid anything under the agreement, or obtained final approval of the agreement, as discussed above, are all irrelevant under § 60A.0811.

12

As for the stopping point, U.S. Bank presses that the date is not until the Court enters judgment on this Motion specifying the amount to which each Insurer is liable. The Insurers maintain that the date is when the Court entered judgment on U.S. Bank's Motion for Summary Judgment, or December 16, 2014.   The difference between the parties' proposed dates reflects a disagreement about when a money judgment was entered.   Logically, the accrual of prejudgment interest ends when the accrual of postjudgment interest begins, and postjudgment interest, which is a procedural matter of federal law, begins to accrue when a "money judgment" is entered.  28 U.S.C. § 1961(a); see also Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co., 933 F.3d 1433, 1437-38 (8th Cir. 1991).   The Court's entry of summary judgment was plainly a money judgment.  Though the Court may not have stated the obvious and specified the amount each Insurer owed, its Order did more than declare the parties' rights and obligations. Instead, it quantified the total amount the Insurers owed and the policy limits then made crystal clear how that amount would be divided.   The stop date for the accrual of prejudgment interest is when the Court entered judgment on the Motion for Summary Judgment, or December 16, 2014.

In sum, U.S. Bank is entitled to an award of prejudgment interest under § 60A.0811 at an annual rate of 10%, starting on April 18, 2013 for Indian Harbor and April 17, 2013 for ACE American, and stopping on December 16, 2014 for both Insurers. On the $30 million settlement payment, this means that Indian Harbor owes

13

$3,326,027.40 and ACE American owes $1,665,753.42.[3]  On the $5 million defense costs, it appears that U.S. Bank incurred some of its defense costs before April 17, 2013 and the rest after that date.  (See Stroebel Aff. Ex. A.)  So ACE American owes prejudgment interest on the defense costs incurred before April 17, 2013 as calculated similarly to the settlement payment, and prejudgment interest on the defense costs incurred after April 17, 2013 as calculated starting on the date the costs were incurred.

**CONCLUSION**

As prejudgment interest is a procedural matter under Minnesota law, Minnesota law applies to the award of prejudgment interest.  Under § 60A.0811, U.S. Bank may recover prejudgment interest from both Insurers.  Accordingly, **IT IS HEREBY ORDERED** that:

1. U.S. Bank's Motion to Amend the Judgment (Docket No. 150) is **GRANTED** to the following extent;

2. The Court's Judgment dated December 16, 2014 is amended to state:

   a. Indian Harbor must pay U.S. Bank $20 million of the settlement payment and $3,326,027.40 of prejudgment interest;

   b. ACE American must pay U.S. Bank $10 million of the settlement payment and $1,665,753.42 of prejudgment interest; and

---

[3] The Court calculates prejudgment interest by taking $20 million for Indian Harbor and $10 million for ACE American, multiplying that by the 10% annual interest rate, dividing that by 365 days, and multiplying that by 607 days for Indian Harbor and 608 days for ACE American.

14

    c.    ACE American must pay U.S. Bank $5 million of the defense costs and prejudgment interest at the annual rate of 10%, starting on April 17, 2013 for those costs incurred before then and on the date the costs were incurred if after then, and stopping on December 16, 2014.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: <u>March 19, 2015</u>

                                                    *s/ Paul A. Magnuson*

                                                    Paul A. Magnuson

                                                    United States District Court Judge

✎AO450 (Rev. 5/85)   Judgment in a Civil Case

# UNITED STATES DISTRICT COURT
## District of Minnesota

U.S. Bank National Association and U.S. Bancorp

**JUDGMENT IN A CIVIL CASE**

V.

Indian Harbor Insurance Company and ACE American Insurance Company

Case Number:  12-cv-3175 (PAM/JSM)

☐ **Jury Verdict.**  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court.**  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED THAT:

1. U.S. Bank's Motion to Amend the Judgment (Docket No. 150) is GRANTED to the following extent;

2. The Court's Judgment dated December 16, 2014 is amended to state:

   a. Indian Harbor must pay U.S. Bank $20 million of the settlement payment and $3,326,027.40

      of prejudgment interest;

   b. ACE American must pay U.S. Bank $10 million of the settlement payment and $1,665,753.42

      of prejudgment interest; and

   c. ACE American must pay U.S. Bank $5 million of the defense costs and prejudgment interest

      at the annual rate of 10%, starting on April 17, 2013 for those costs incurred before then and

      on the date the costs were incurred if after then, and stopping on December 16, 2014.

| | |
|---|---|
| March 20, 2015 | RICHARD D. SLETTEN, CLERK |
| Date | |
| | s/L. Brennan |
| | (By)          L. Brennan,   Deputy Clerk |



# UNITED STATES DISTRICT COURT
## District of Minnesota

| | | | |
|---|---|---|---|
| Warren E. Burger Federal Building and U.S. Courthouse 316 North Robert Street Suite 100 St. Paul, MN  55101 (651) 848-1100 | U.S. Courthouse 300 South Fourth Street Suite 202 Minneapolis, MN 55415 (612) 664-5000 | Gerald W. Heaney Federal Building and U.S. Courthouse 515 West First Street Suite 417 Duluth, MN 55802 (218) 529-3500 | Edward J. Devitt U.S. Courthouse and Federal Building 118 South Mill Street Suite 212 Fergus Falls, MN  56537 (218) 739-5758 |

## CIVIL NOTICE

**The appeal filing fee is $505.00.  If you are indigent, you can apply for leave to proceed in forma pauperis, ("IFP").**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

> ***This is a summary only.  For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal.  This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires.  If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it.  The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

U.S. BANCORP, a Delaware corporation, and U.S. BANK NATIONAL ASSOCIATION, a national banking association,

Case No.:  12-cv-03175-PAM-JSM

                **Plaintiffs,**

vs.

**NOTICE OF APPEAL**

INDIAN HARBOR INSURANCE COMPANY, a North Dakota corporation, and ACE AMERICAN INSURANCE COMPANY, a Pennsylvania corporation,

                **Defendants.**

_____

Notice is hereby given that ACE American Insurance Company, defendant in the above-named case, hereby appeals to the United States Court of Appeals for the Eighth Circuit from the judgment entered on December 16, 2014 (Dkt. # 149) and the amended judgment entered on March 20, 2015 (Dkt. # 163), and from each and every part thereof, including, but not limited to, the Memorandum and Order denying ACE American Insurance Company's Motion for Judgment on the Pleadings, entered on July 3, 2014 (Dkt. # 105); the Order granting Plaintiffs' Motion for Summary Judgment, entered on December 16, 2014 (Dkt. # 148); and the Memorandum and Order granting Plaintiffs' Motion to Amend the Judgment, entered on March 19, 2015 (Dkt. #162).

Dated:        May 19, 2015

By:   /s/ Tiffany S. Saltzman-Jones

WALKER WILCOX MATOUSEK LLP
Edward P. Gibbons
Tiffany S. Saltzman-Jones
1 N. Franklin Street, Suite 3200
Chicago, IL 60606
Tel: 312.244.6744
egibbons@wwmlawyers.com
tsj@wwmlawyers.com

and

FORD & HARRISON LLP

Alec J. Beck, (Bar#201133)
225 South Sixth St., Suite 3150
Minneapolis, MN 55402
Tel: 612.486.1629
abeck@fordharrison.com

*Attorneys for Defendant ACE American Insurance Company*

2

U.S. COURT OF APPEALS - EIGHTH CIRCUIT

APPELLANT'S FORM A

Appeal Information Form

To be filed with the Notice of Appeal

Appeal Docket No.

_____

**STYLE OF CASE:**

U.S. BANK NATIONAL ASSOCIATION and U.S. BANCORP,

                    Appellees,

vs.

INDIAN HARBOR INSURANCE COMPANY and ACE AMERICAN INSURANCE COMPANY,

                    Appellants.

COUNSEL: NAME, ADDRESS, AND TELEPHONE NUMBER

William G. Passannante
Marshall Gilinsky
ANDERSON KILL, P.C.
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 278-1000

COUNSEL: NAME, ADDRESS, AND TELEPHONE NUMBER

For Ace American Insurance Company:
Edward P. Gibbons
Tiffany Saltzman-Jones
WALKER WILCOX MATOUSEK, LLP
One North Franklin, Suite 3200
Chicago, IL 60606
(312) 244-6700

LIST ISSUES ON APPEAL(For administrative purposes). You may indicate that this also serves as your statement of issues under FRAP 10(b)(3).      ☐ Yes.    ☒ No.

ACE American Insurance Company appeals from the judgment entered on December 16, 2014 (Dkt. # 149) and the amended judgment entered on March 20, 2015 (Dkt. # 163), and from each and every part thereof, including, but not limited to, the Memorandum and Order denying ACE American Insurance Company's Motion for Judgment on the Pleadings, entered on July 3, 2014 (Dkt. # 105); the Order granting Plaintiffs' Motion for Summary Judgment, entered on December 16, 2014 (Dkt. # 148); and the Memorandum and Order granting Plaintiffs' Motion to Amend the Judgment, entered on March 19, 2015 (Dkt. #162).

FOR LEAD COUNSEL ONLY

I ☒ have (☐ have not) discussed settlement possibilities on appeal with my client.

This appeal ☒ is (☐ is not ) amenable to settlement.

Submitted by: s/  Edward P. Gibbons                              05/19/15

                        Signature of Lead Counsel                        Date

INSTRUCTIONS:

Filing of appellant's Form A is required to be submitted to the Clerk of the District Court with the Notice of Appeal (8 Cir. Rule 3B). If inadvertently omitted, appellant may file Form A directly with the Clerk of the Court of Appeals before appeal is docketed. Forms are available at the District Court Clerk's Office and may be obtained electronically at:

www.ca8.uscourts.gov

            Copy 1 - Send to Appellee (together with an uncompleted Form B)
            Copy 2 & 3 - Send to Clerk, District Court with Notice of Appeal or Eighth Circuit (see above)
            Copy 4 - Retain



# UNITED STATES DISTRICT COURT
## District of Minnesota

Richard D. Sletten, Clerk
Tricia M. Pepin, Chief Deputy Clerk

| | | | |
|---|---|---|---|
| Warren E. Burger Federal Building and U.S. Courthouse 316 North Robert Street, Suite 100 St. Paul, MN  55101 (651) 848-1100 | U.S. Courthouse 300 South Fourth Street Suite 202 Minneapolis, MN 55415 (612) 664-5000 | Gerald W. Heaney Federal Building and U.S. Courthouse and Customhouse 515 West First Street, Suite 417 Duluth, MN 55802 (218) 529-3500 | Edward J. Devitt U.S. Courthouse and Federal Building 118 South Mill Street, Suite 212 Fergus Falls, MN  56537 (218) 739-5758 |

## TRANSMITTAL OF APPEAL

Date:   May 19, 2015

To:   U.S. COURT OF APPEALS, 8TH CIRCUIT

From:  L. Brennan, U.S. District Court-Minnesota

In Re:  District Court Case No.:  12-cv-03175-PAM-JSM
        Eighth Circuit Case No.:  15-01691
        Case Title:  U.S. Bank National Association et al v. Indian Harbor Insurance Company et al

The statutory filing fee has:
☒been paid, receipt number: 0864-4429661
☐not been paid as of  Add date
    IFP    ☐is  ☐is not pending
☐been waived because:
    ☐Application for IFP granted          ☐USA filed appeal

Length of Trial:  N/A days

Was a court reporter utilized?          ☒Yes  ☐No
If yes, please identify the court reporter:
Name:  Carla Bebault; Ron Moen
Address:  Add street address
          Add street address
          Add city, state and zip
Phone:  (651) 848-1220

Original file(s) consisting of 0 file(s) and 0 expandables.

Transcript(s):

| Volume | Date | Proceeding |
|--------|------|------------|
| 1 | 03/11/2014 | Motions Hearing held 02/28/2014, Dkt #56 |
| 1 | 04/01/2014 | Motions Hearing held 03/26/2014, Dkt #90 |
| 1 | 04/21/2015 | Motions Hearing held 06/18/2014, Dkt #173 |
| 1 | 04/21/2015 | Motions Hearing held 10/23/2014, Dkt #175 |
|   |   |   |
|   |   |   |
|   |   |   |
|   |   |   |
|   |   |   |
|   |   |   |
|   |   |   |
|   |   |   |